HOUSEHOLD FINANCE CORP. ET AL., APPELLANTS, *v.* PORTERFIELD, TAX COMMR., APPELLEE.

[Cite as Household Finance Corp. v. Porterfield (1970), 24 Ohio St. 2d 39.]

40

(No. 69-184—Decided October 7, 1970.)

Messrs. *Lucas, Prendergast, Albright, Gibson, Brown & Newman* and *Mr. Rankin M. Gibson,* for appellants.

*Mr. Paul W. Brown,* attorney general, and *Mr. Jon A. Ziegler,* for appellee.

SCHNEIDER, J.  Household Finance Corporation (HFC) and its subsidiary corporations[1] are appealing a decision of the Board of Tax Appeals which affirmed the Tax Com-

---

[1]HFC has a number of corporate subsidiaries which are also engaged as dealers in intangibles in Ohio.  As the parent corporation, HFC filed a consolidated return for the dealers in intangibles tax year 1966, on behalf of itself and those subsidiaries, as permitted by R. C. 5725.14.  HFC also has a number of other corporate subsidiaries which are not engaged in any business defined in R. C. 5725.01 *et seq.*

No tax was assessed against the shares issued by the subsidiaries of either class which are owned and held *by* HFC.  The only tax involved is that imposed upon the issued and outstanding shares *of* HFC, as explained in the opinion.

Therefore, we fail to understand the necessity for, or the relevance of, joining any subsidiaries in the appeal to the Board of Tax Appeals, or in this appeal.  Consequently, the appellants are referred to in the opinion in the singular, as HFC, which is the sole real party in interest.

missioner's final assessment of the dealer in intangibles (DIT) tax against it.

HFC is a foreign corporation and maintains it headquarters outside Ohio. It is authorized to do, and does, business in this state as a dealer in intangibles (DIT), as defined in R. C. 5725.01.[2] As such, it is required to make

---

[2]R. C. 5725.01:

(A) "Financial institution" includes every person who keeps an office or other place of business in this state and engages in the business of receiving deposits, lending money, and buying or selling bullion, bills of exchange, notes, bonds, stocks, or other evidences of indebtedness with a view to profit or is licensed as a small business investment company under the "Small Business Investment Act of 1958" and amendments thereto (15 U. S. C. §661 *et seq.*) or is chartered under the "Farm Credit Act of 1933" and amendments thereto (12 U. S. C. 1131 (d)). Corporations or institutions organized under the "Federal Farm Loan Act" and amendments thereto, and insurance companies shall not be considered financial institutions or dealers in intangibles within the meaning of such sections.

(B) "Dealer in intangibles" includes every person who keeps an office or other place of business in this state and engages at such office or other place in the business of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness, or of buying or selling bonds, stocks, or other investment securities, whether on his own account with a view to profit, or as agent or broker for others, with a view to profit or personal earnings. Dealer in intangibles excludes institutions used exclusively for charitable purposes, insurance companies, and financial institutions. Neither casual nor isolated transactions of any of the kinds enumerated in this division of this section, nor the investment of funds as personal accumulations or as business reserves or working capital constitute engaging in business within the meaning of this division of this section; but a person who, having engaged in the business of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness on his own account, remains in business for the purpose of realizing upon the assets of such business is deemed a dealer in intangibles, though not presently engaged in lending money or discounting or buying such securities.

(C) "Insurance company" includes every corporation, association, and society engaged in the business of insurance of any character, or engaged in the business of entering into contracts substantially amounting to insurance of any character, or of indemnifying or guaranteeing

return for, collect and remit to the state of Ohio the DIT tax provided for in R. C. 5725.01 to 5725.26, inclusive.

For the purposes of this appeal, it is sufficient to say that the burden of the DIT tax falls, not upon HFC itself, but upon its issued and outstanding shares of capital stock; but only to the extent of the fair value of the capital employed (capital stock, surplus and undivided profits) in this state, measured by the ratio which the Ohio gross receipts of HFC bear to its total gross receipts from DIT business. R. C. 5725.15.[8]

---

against loss or damage, or acting as surety on bonds or undertakings.

(D) "Domestic insurance company" includes every insurance company organized and existing under the laws of this state, and every unincorporated association and society formed for the purpose of engaging in said business in this state, and excludes every foreign insurance company.

(E) "Foreign insurance company" includes every insurance company organized or existing under the laws of any other state, territory, country, or the United States.

[8]R. C. 5725.15:

Upon receiving the report required by Section 5725.14 of the Revised Code, the Tax Commissioner shall ascertain and assess all the shares of such dealers in intangibles, the capital stock of which is divided into shares, representing capital employed in this state, and the value of the property representing the capital, not divided into shares, employed in this state by such dealer in intangibles, according to the aggregate fair value of the capital, surplus, and undivided profits as shown in such report, including in the case of an unincorporated dealer, the value of property converted into nontaxable bonds or securities within the preceding year without deduction for indebtedness created in the purchase of such nontaxable bonds or securities.

If a dealer has separate offices, whether within this state only or within and without this state, the commissioner shall find the amount of capital employed in each office in this state, which shall bear the same ratio to the entire capital of such dealer, wherever employed, as the gross receipts of such office bears to the entire gross receipts of such dealer, wherever arising.

The aggregate book value of the capital, surplus, and undivided profits of a dealer in intangibles as shown in such report shall be taken as the fair value thereof for the purpose of the assessment required by this section, unless the commissioner finds that such book value is greater or less than the then fair value of said capital, surplus,

The first proposition advanced by HFC in this court is that the DIT tax may not be lawfully or constitutionally assessed against those issued and outstanding shares of capital stock which are owned and held by nonresidents of Ohio, and thus have a "situs" without this state.

We reject this proposition for the reason that, as already shown, the tax in question is not imposed upon either the certificates of shares or upon the value of the shares themselves, but the tax is imposed upon the capital represented by the shares to the extent that the capital is employed in Ohio. In other words, if, as in the instant case, only 4.11722% of a DIT's gross receipts is attributable to Ohio, the basis of the tax upon each issued and outstanding share of the DIT's stock is 4.11722% of its fair value, as representative of the capital employed in Ohio.

Moreover, the DIT tax is in lieu of *all other taxes* on the property and assets of HFC other than its real estate situated in Ohio. R. C. 5725.26.[4]

HFC contends that *Certified Credit Corp.* v. *Bowers* (1963), 174 Ohio St. 239, is not dispositive of the first question involved in this case, because there appellant was an Ohio corporation with its principal office in this state, whereas here appellant is a foreign corporation. That distinction misses the mark. In *Certified Credit*, the "resi-

---

and undivided profits. Claim for any deduction from book value of capital, surplus, and undivided profits must be made in writing by the dealer in intangibles at the time of making his return.

Whenever the commissioner assesses the fair value of the capital, surplus, and undivided profits of a dealer in intangibles at an amount in excess of the book value thereof as shown by its report, or disallows any claim for deduction from book value of such capital, surplus, and undivided profits, he shall give notice and proceed as provided in Section 5711.31 of the Revised Code.

[4]R. C. 5725.26:

The real estate of a financial institution or dealer in intangibles shall be taxed in the place where it is located, the same as the real estate of persons is taxed, but the taxes provided for in Sections 5725.01 to 5725.26, inclusive, of the Revised Code, shall be in lieu of all other taxes on the other property and assets of such institution or dealer.

dent" DIT corporation claimed exemption for its shares held by *nonresidents of Ohio*, which is the same claim that is presented here. That claim was denied, and the DIT tax upon the foreign-held shares was deemed not to contravene the due process or interstate commerce clauses of the Constitution of the United States (paragraph two of the syllabus, 174 Ohio St. 239).

Additionally, two years before *Certified Credit Corp.*, this proposition was settled, albeit *sub silento*, in *National City Bank of Cleveland* v. *Bowers* (1961), 172 Ohio St. 378. Two appeals were there involved. In No. 36781, it was held, by a four-to-three decision, that shares of stock of a financial institution owned by foreign insurance companies, domestic insurance companies, resident DITs and *nonresident* DITs are subject to the financial institution tax, the applicable provisions of which parallel the DIT tax and are imposed by the same chapter of the Revised Code.

Taft, J., in writing the dissent, said "I concur in . . . that part of the judgment in case No. 36781 relating to bank shares owned by nonresidents of Ohio." Two other judges having joined in Judge Taft's dissent, that proposition was adopted by a unanimous court.

The second *National City Bank* case (*National City Bank of Cleveland* v. *Porterfield* [1968], 15 Ohio St. 2d 235), overruled the first *National City Bank* case, but only upon the basis of Judge Taft's dissent therein.

This leads us directly to HFC's second and last proposition of law, namely, that the DIT tax may not lawfully be imposed on those of its issued and outstanding shares which are owned by financial institutions, domestic and foreign insurance companies, and other dealers in intangibles, in view of the second *National City Bank* case, *supra* (15 Ohio St. 2d 235).

We cannot reach the proposition on this record, not merely because HFC did not raise the issue in its application to the Tax Commissioner for review and redetermination or in its notice of appeal to the board (the case was decided subsequent to the later event), but for the more

important reason that the record does not indicate that the shares, for which exemption from the DIT tax is claimed, are owned by persons who, under the second *National City Bank* case, *supra* (15 Ohio St. 2d 235), and the applicable statutes (R. C. 5725.25[5] and 5725.26), are eligible to claim the exemption, *i. e.,* persons who are engaged as dealers in intangibles, financial institutions or insurance companies in this state, in whole or in part.

The parallel language of those two statutes, at least as to domestic insurance companies, financial institutions and DITs, is that their "real estate . . . shall be taxed in the place where it is located, the same as the real estate of [other] persons is taxed, but the *tax[es] provided for in [by] Sections 5725.01 to 5725.26, inclusive . . . shall be in lieu of all other taxes on the other property and assets of*" such entities. (Emphasis supplied.)

It seems uncommonly plain, therefore, that before HFC may claim exemption from the tax imposed by R. C. 5725.01 *et seq.,* on those of its issued and outstanding shares which are, in turn, the "other property and assets" of its shareholders who are within the classes named in the quoted statutory language, it is incumbent upon HFC to show affirmatively that each of those shareholders is, in turn, amenable to one of the taxes imposed by R. C. 5725.01 *et seq.*

---

[5]R. C. 5725.25:

The real estate of a domestic insurance company shall be taxed in the place where it is located, the same as the real estate of other persons is taxed, but the tax provided for by Sections 5725.01 to 5725.26, inclusive, of the Revised Code, shall be in lieu of all other taxes on the other property and assets of such domestic insurance company and of all other taxes, charges, and excises on such domestic insurance companies, and of all other taxes on the stockholders, members, or policyholders of such company by reason of their stock or other interest in such insurance company, except as to annuities or the right to receive the proceeds of a policy payable after its maturity in installments, or left with the company at interest. Sections 5725.01 to 5725.26, inclusive, of the Revised Code do not assess any tax on a foreign insurance company or affect any tax on a foreign insurance company under any laws of this state.

All that the record here shows is a proffer by HFC "that a substantial number of shares of HFC stock is owned by dealers in intangibles, mutual funds, financial institutions, and insurance companies." Even assuming that mutual funds are DITs, as HFC claims, and accepting the proffer as evidence, we may not assume—nor could the board or the Tax Commissioner assume—that such dealers in intangibles, mutual funds and financial institutions are doing business in Ohio and thus are amenable to R. C. 5725.01 *et seq.* Neither may we assume that the "insurance companies" are domestic instead of foreign, or, if foreign, that they are amenable to R. C. 5725.25.

Finally, the sole issue raised directly upon the filing of HFC's return (see the last paragraph of R. C. 5725.15 and *Wright Aeronautical Corp.* v. *Glander* [1949], 151 Ohio St. 29, construing similar language), although considered by the board and alluded to in both oral argument and the briefs in this court, was not presented to this court as a proposition of law and argued as such. It is therefore deemed to be abandoned.

The decision of the Board of Tax Appeals, being neither unreasonable nor unlawful, is, therefore, affirmed.

*Decision affirmed.*

O'NEILL, C. J., HERBERT, DUNCAN and CORRIGAN, JJ., concur.°

STERN and LEACH, JJ., not participating.

---

°CHIEF JUSTICE TAFT participated in this case which was, however, decided after his death.