Sun Finance & Loan Company, Appellee, *v.* Kosydar, Tax Commr., Appellant.

[Cite as Sun Finance & Loan Co. v. Kosydar (1976), 45 Ohio St. 2d 283.]

(No. 75-105—Decided March 17, 1976.)

*Messrs. Walker & Chatfield, Mr. Burgess L. Doan, Mr. Harold W. Walker* and *Mr. Joseph Beech III*, for appellee.

*Mr. William J. Brown*, attorney general, and *Mr. John C. Duffy, Jr.*, for appellant.

*Per Curiam.* The sole issue before this court is whether the business done by Sun's out-of-state consumer finance subsidiaries, which subsidiaries do not operate offices in Ohio, should be included in the R. C. 5725.15 apportionment formula utilized to determine the extent to which Sun's total net worth is to be allocated to Ohio.[1]

There is no question that Sun is a "dealer in intangibles" as that term is defined in R. C. 5725.01 (B).[2] As

---

[1]Sun also claims that "[a]cceptance of the interpretation urged by the commissioner would result in an unconstitutional method of taxation." Because the record is insufficient to warrant consideration of this assertion, we do not reach this issue. See *Petrocon* v. *Kosydar* (1974), 38 Ohio St. 2d 264.

[2]R. C. 5725.01(B) provides, in pertinent part:

" 'Dealer in intangibles' includes every person who keeps an office or other place of business in this state and engages at such office or other place in the business of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness * * *."

such, Sun is admittedly subject to the Ohio dealer-in-intangibles tax. The question presented, then, is to what extent is Sun so subjected.

Resolution of the issue presented herein requires consideration of a number of statutory enactments.

R. C. 5725.13 provides, in pertinent part:

"The following property shall be listed and assessed at its fair value. * * *.

"(A) The shares of the stockholders in an incorporated dealer in intangibles having an actual place of business in this state, to the extent represented by capital employed in this state[.]"

R. C. 5725.14, which concerns the filing of returns and consolidated returns, provides, in pertinent part:

"Each dealer in intangibles shall return to the Tax Commissioner * * * annually, a report exhibiting in detail * * * his resources and liabilities at the close of business on the thirty-first day of December next preceding.* * *

"If a dealer in intangibles maintains separate business offices, whether within this state only or within and without this state, said report shall also show the gross receipts from business done at each such office during the year ending on the thirty-first day of December next preceding.

" 'Gross receipts' * * * means, in the case of a dealer in intangibles principally engaged in the business of lending money or discounting loans, the aggregate amount of loans effected or discounted * * *.

" * * * *

"An incorporated dealer in intangibles which owns or controls fifty-one per cent or more of the common stock of another incorporated dealer in intangibles may, under uniform regulations prescribed by the Tax Commissioner,[3] make a consolidated return * * *."

---

[3]The Tax Commissioner has provided for consolidated returns in Rule TX-41-04, which provides, in pertinent part:

"An incorporated dealer in intangibles having availed itself of the privilege of filing a consolidated return, as herein provided, shall include therein all of its subsidiary incorporated dealers in intangibles in which it owns or controls at least fifty-one per cent of the common stock."

R. C. 5725.15, which sets forth the allocation formula and instructions for valuation, provides, in pertinent part:

"Upon receiving the report required by Section 5725.-14 of the Revised Code, the Tax Commissioner shall ascertain and assess all the shares of such dealers in intangibles, the capital stock of which is divided into shares, representing capital employed in this state, and the value of the property representing the capital, not divided into shares, employed in this state by such dealer in intangibles, according to the aggregate fair value of the capital, surplus, and undivided profits as shown in such report * * *.

"If a dealer has separate offices, whether within this state only or within and without this state, the commissioner shall find the amount of capital employed in each office in this state, which shall bear the same ratio to the entire capital of such dealer, wherever employed, as the gross receipts of such office bears to the entire gross receipts of such dealer, wherever arising."

Both parties rely upon two prior decisions of this court, *Certified Credit Corp.* v. *Bowers* (1963), 174 Ohio St. 239, and *Household Finance Corp.* v. *Porterfield* (1970), 24 Ohio St. 2d 39, in support of their respective positions.

In *Certified Credit Corp.* v. *Bowers, supra,* the court held the "gross receipts formula" to be a reasonable method of allocation of capital and, as such, not violative of either the Due Process or the Commerce Clause of the United States Constitution. In so holding, the court construed and explained R. C. 5725.13, 5725.14, and 5725.15 in the following manner:

"By reading Sections 5725.13, 5725.14 and 5725.15 *in pari materia,* it is clear that the tax on the shares of shareholders of a dealer in intangibles is assessed at the fair value of the capital employed in this state, allocated on the basis of the ratio of the gross receipts of the Ohio office or offices from consumer financing to the entire gross receipts from the dealer's small-loan and consumer finance business. * * *" 174 Ohio St. at 241.

We do not construe *Certified Credit* as dispositive of

the instant cause, however, as the opinion in that case does not indicate the manner in which the taxpayer therein operated its business. Although it is clear that out-of-state subsidiaries were involved in *Certified Credit*, it is not clear whether such subsidiaries were maintained as separately incorporated entities or as non-corporate divisions of the corporate parent. As a difference in R. C. Chapter 5725 taxation may result, as will be discussed *infra,* such distinction is crucial, and compels rejection of *Certified Credit* as controlling authority applicable herein.

In *Household Finance Corp.* v. *Porterfield, supra,* the court held, at page 42, that "* * * [T]he burden of the DIT tax falls * * * upon its [HFC's] issued and outstanding shares of capital stock; but only to the extent of the fair value of the capital employed (capital stock, surplus and undivided profits) in this state, measured by the ratio which the Ohio gross receipts of HFC bear to its total gross receipts of DIT business. R. C. 5725.15."

In fn. 1 of the opinion in *Household Finance,* at page 40, the court indicated that the parent corporation, in filing a consolidated dealer-in-intangibles return pursuant to R. C. 5725.14, was the real party in interest with respect to its "corporate subsidiaries which are also engaged as dealers in intangibles in Ohio."

Analysis of *Household Finance Corp.* v. *Porterfield, supra,* reveals that only returns of dealers in intangibles as defined in R. C. 5725.01 may be included in an R. C. 5725.14 consolidated return, and, concomitantly, that only loans discounted by such dealers qualify for inclusion in the denominator of the R. C. 5725.15 apportionment formula.

In the instant cause, Sun included loans discounted by its wholly-owned out-of-state corporate subsidiaries in the denominator of the R. C. 5725.15 apportionment formula. Under *Household Finance,* however, only those loans discounted by a dealer in intangibles may be so included. In order to qualify as a dealer in intangibles, R. C. 5725.01 (B) requires that an "office or other place of business" be kept in this state.

Sun has decided to operate its business using separately incorporated divisions rather than non-corporate branch offices or subsidiaries, apparently in order to limit its tort and contract liability. In so doing, however, Sun has exposed itself to greater R. C. Chapter 5725 tax liability, for each such separately incorported division must keep an "office or other place of business" in this state to qualify as a dealer in intangibles. Since no such offices exist, loans discounted by Sun's separately incorporated out-of-state divisions may not be included in the denominator of the R. C. 5725.15 allocation formula.

This result is mandated by statute, even though all such loans must be included in the assets of Sun in making the fair value computation required by R. C. 5725.13. Sun is the parent corporation, and, as such, its capital account includes the value of its wholly-owned, separately incorporated, out-of-state divisions. This capital is available for use in this state and thus is "capital employed" in this state in accordance with R. C. 5725.13.

For the foregoing reasons, the decision of the Board of Tax Appeals is unreasonable and unlawful, and is reversed.

*Decision reversed.*

O'Neill, C. J., Corrigan, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.

Herbert, J., concurs in the judgment only.