WHITE MOTOR CORPORATION, APPELLEE AND APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLANT AND APPELLEE.

(Nos. 76-928 and 76-969—Decided June 29, 1977.)

294

*Mr. William J. Brown,* attorney general, and *Mr. Michael L. Moushey,* for appellee and appellant.

*Messrs. Squire, Sanders & Dempsey, Mr. William H. Conner, Mr. William H. Lutz, Jr.,* and *Mr. James H. Woodring,* for appellant and appellee.

O'NEILL, C. J. The first issue is whether the Low Bay Triax system is excepted from the Ohio sales tax under R. C. 5739.02(B)(16) and Rule TX-15-08.

The Canton plant builds tractor engines by taking various component parts and, after various processing

steps, assembles them into a finished product. The Canton plant does not produce these components. They are manufactured at the Charles City, Iowa, Foundry. It has been stipulated that the Charles City Foundry is a wholly-owned subsidiary of the White Motor Corporation. The Low Bay Triax is used exclusively to store components that are not needed immediately when they arrive from Charles City. This Triax neither transports any items through the plant nor stores any work in progress.

The Board of Tax Appeals concluded that the Low Bay Triax system was not amenable to taxation, stating:

"It is the opinion of the Board of Tax Appeals, for purposes of TX-15-08, the term 'persons' may include a combination of corporate subsidiaries or subdivisions where said divisions are wholly-owned subsidiaries of a larger parent corporation, as the appellant herein.

" * * *

"The record is clear that the casting of engine heads and blocks had begun at appellant's wholly-owned subsidiary at Charles City, Iowa. Therefore, the low-bay 'Triax System' and feeder are materials handling equipment and temporary storage used to transport and store items in the process of production for sale by manufacturing between two plants operated by the same person."

Although there is some dispute between the parties on whether the board's determination rested on R. C. 5739.-02(B)(16) or R. C. 5739.01(E)(2), this court holds that the board's conclusion rests upon a construction of "person" as used in R. C. 5739.02(B)(16). That section provides, in relevant part, that the tax does not apply to:

"Sales * * * of handling and transportation equipment * * * used in intra and inter plant transfers or shipments of tangible personal property in the process of production for sale by manufacturing * * * [or] assembling * * * where the plant or plants within or between which such transfers or shipments occur are operated by the same person * * *." (Emphasis added.)

Also relevant to this point is Rule of the Tax Com-

sioner TX-15-08, which provides in pertinent part:

"(6) Materials handling equipment * * * used to transport items in the process of production for sale by manufacturing * * * [or] assembling * * * within a plant or between two plants operated by the same person."

The statute and rule make it clear that in order to qualify for the exception the contested items must be used during production, either as a part of the process done exclusively at the Canton plant or as the continuation of a process begun at another plant operated by the same *person* that operates the Canton plant.

R. C. 5739.01 defines "person" as used in R. C. Chapter 5739 as:

"(A) 'Person' includes individuals, receivers, assignees, trustees in bankruptcy, estates, firms, partnerships, associations, joint-stock companies, joint ventures, clubs, societies, corporations, the state and its political subdivisions, and combinations of individuals of any form."

As to this issue, this court holds that the decision of the board must be reversed. There is nothing in the above definition that justifies the board's determination that a wholly-owned subsidiary corporation is the same "person" as the parent corporation within the purview of the sales tax and use tax laws. Subject to a few exceptions not herein applicable, it is a long-established rule that parent and subsidiary corporations are separate and distinct legal entities. See, *Sun Finance & Loan Co.* v. *Kosydar* (1976), 45 Ohio St. 2d 283, 344 N. E. 2d 330. Charles City Foundry is not the same "person" as White Motor and, therefore, the board's determination to the contrary is both unreasonable and unlawful.

The second issue before this court is whether the designs, drawings, and manuals acquired by White from Spartan, Techni-Tool, and Cross are excepted from the sales tax by R. C. 5739.01(B). Insofar as Spartan and Techni-Tool are concerned, those items were produced at the request of White and were used when ordering the tools from other manufacturers. Cross operated differently.

It both designed and manufactured the machines. Cross also delivered an instruction manual to White for each machine delivered.

Relying upon *Koch* v. *Kosydar* (1972), 32 Ohio St. 2d 74, 290 N. E. 2d 847, and *Accountant's Computer Services* v. *Kosydar* (1973), 35 Ohio St. 2d 120, 298 N. E. 2d 519, the Board of Tax Appeals concluded that the drawings, designs and manuals were excepted from the sales tax. Specifically, the board found that the engineering and design services performed by Spartan, Techni-Tool and Cross "* * * were unique services, paid for by * * * [White] on a bid or hourly basis and done at the specific request of * * * [White]. The resulting drawings and blueprints were not sold or otherwise furnished by * * * [White] or the engineering firms to anyone else. The services of Spartan, Techni-Tool and Cross were, in effect, the intellectual or manual personal effort of individuals, and not the saleable product of their skill. Inherent in the real object sought was an analysis of * * * [White's] request for designs for manufacturing machinery; it was this analysis, thinking, interpretation and ultimate presentation to * * * [White] of machine designs that was consequential; the drawings and manuals were inconsequential tangible personal property which was transferred for purposes of communication."

During the audit period here in question, R. C. 5739.01(B) provided, in pertinent part, that the terms "sale" and "selling" "do not include professional, insurance, or personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made."

Considering the transactions with Spartan, Techni-Tool, and Cross, this court finds the board's determinations both unreasonable and unlawful, and reverses those determinations.

This court has frequently considered R. C. 5739.01(B) and, in so doing, has both defined the term "personal service" and created the so-called "real object test" to de-

termine the taxability of transactions containing an element of personal service.

In *Koch* v. *Kosydar, supra* (32 Ohio St. 2d 74), this court adopted the following as paragraph one of its syllabus:

" 'Personal service,' as used in R. C. 5739.01(B), means an act done personally by an individual; it is, in effect, an economic service involving either the intellectual or manual personal effort of an individual, and is not the saleable end product of his skill."

Then, in *Accountant's Computer Services* v. *Kosydar, supra* (35 Ohio St. 2d 120), this court established the test for determining whether a consequential or inconsequential service has occurred. In paragraph two of its syllabus, the court said:

"In determining whether a mixed transaction constitutes a consequential personal service transaction, a distinction must be made as to the *true object* of the transaction contract; that is, is the real object sought by the buyer the service *per se* or the property produced by the service."

In *United States Shoe Corp.* v. *Kosydar* (1975), 41 Ohio St. 2d 68, 322 N. E. 2d 668, and *Federated Department Stores* v. *Kosydar* (1976), 45 Ohio St. 2d 1, 340 N. E. 2d 840, this court clarified further the "personal service" exception to the definition of a sale. Both of those cases involved the taxability of advertising materials. Both taxpayers had acquired such items as tapes for radio and television commercials, sales brochures, photographs, and free lance art work for use in magazine advertisements. Both taxpayers claimed that R. C. 5739.01(B) operated to preclude the Tax Commissioner from collecting the sales tax.

In *United States Shoe, supra*, the court stated in its opinion (41 Ohio St. 2d, at page 73):

" * * * In the instant case, the Board of Tax Appeals found that the taxpayers' main concern was to acquire possession of the films, commercials, radio tapes, brochures, photographs and annual reports. We agree with that de-

termination. Taxpayers paid the agencies a substantial consideration for their services, and it is unlikely this would have occurred without receipt of the above items. It was their intention to acquire materials to use in advertising, and the personal property purchased was the 'real object' sought by the buyers. * * * ''

Similarly, in *Federated, supra,* the court adopted the following as paragraphs one and two of its syllabus:

''Where the record indicates that the taxpayer's real object in transactions involving the use of radio and T. V. tapes and films in advertising is to acquire the tapes and films, themselves, then the personal service performed in connection with the production of such advertising compositions is an inconsequential element of the transactions, and the transfer of such compositions is subject to the Ohio sales and use taxes, pursuant to R. C. Chapter 5739.

''Where the record indicates that the taxpayer's real object in transactions involving the payment of hourly fees to free-lance artists for the production of specified sketches, for use by the taxpayer's advertising department in newspaper and magazine compositions, is to acquire the sketches, themselves, then the personal service performed by the artists is an inconsequential element of the transactions, and the transfer of the sketches is subject to Ohio sales and use taxes, pursuant to R. C. Chapter 5739.'' (45 Ohio St. 2d, at pages 1-2.)

This court finds the abovementioned authorities controlling. As in *United States Shoe, supra,* and *Federated, supra,* the present instance involves a situation where the tangible property was produced by highly skilled people. As in both, the property in this case was designed to meet the specific needs of the taxpayer's business. In *Federated, supra,* for example, this court held the transfer of artistic sketches to be a taxable transaction. In such a situation, this court found the expertise and skill far less important, in the eyes of the taxpayer, than the end product of that skill. Such reasoning is equally cogent in the transfer of engineering drawings.

Although the taxpayer relies heavily on *Accountant's*

*Computer Services* v. *Kosydar, supra* (35 Ohio St. 2d 120), this court finds the cases discussed therein distinguishable.

In Case No. 72-263, *Accountant's Computer Services, Inc.* (ACS), and in Case No. 72-660, *Central Data System, Inc.* (CDS), the taxpayers obtained, from the data processing or market research organizations, an analysis of their business problems. Moreover, the computer printouts transferred were accompanied with professional consultation.

Relying upon *United States Shoe, supra,* and *Federated, supra,* this court holds that designs and drawings which are purchased and then used when ordering tools and machines from a company which manufactures them according to the designs and drawings are subject to sales and use taxes pursuant to R. C. Chapter 5739, for the reason that the taxpayer's real object is to acquire the designs and drawings themselves which set forth the plans from which the manufacturer can produce the tools and machines.

Regarding the taxability of the taxpayer's transactions with Cross, the above conclusion is not dispositive. As noted earlier, the taxpayer's transactions with Cross are different from those with Spartan and Techni-Tool. Unlike the services performed by the other engineering firms, White's contract with Cross provided for the custom engineering, design, and manufacture of the machines comprising the head and block production line. White did not separately order engineering services; its order to Cross was only for the machines themselves. However, Cross' invoice did separately charge for the designs and the machines.

Believing the factual differences significant, the taxpayer argues that the Cross drawings and manuals should be excepted from the sales tax on grounds independent of the personal service exception contained in R. C. 5739.01 (B). Although the taxpayer presents several arguments on this point, only one deserves serious attention.

The taxpayer argues that the Cross drawings and man-

uals are excepted from taxation because such items consti-
tute property used in the repair and maintenance of pro-
duction equipment. R. C. 5739.01(E)(2) provides that
property is not subject to taxation if the purpose of the con-
sumer is "to use * * * the thing transferred directly in the
production of tangible personal property * * * for sale by
manufacturing." Using the rule-making power granted
under R. C. 5703.05(N) (now 5703.05[M]), the Tax Com-
missioner interpreted this portion of the statute in Rule
TX-15-08:

"Persons engaged in the production of tangible per-
sonal property for sale by manufacturing, processing, as-
sembling or refining, may claim exemption when purchasing:

"* * *

"(11) Machinery, equipment, and other personal prop-
erty used to repair or maintain machinery, equipment and
other personal property * * *."

This court recently stated in *Babcock & Wilcox* v.
*Kosydar* (1976), 48 Ohio St. 2d 251, 358 N. E. 2d 544, that
for the purchase of an item to be excepted from taxation
under the Sales Tax Act or the Use Tax Act, the item must
be indispensable to and directly connected with the actual
manufacture or processing of the particular article to be
sold. In the instant case, the commissioner's rule notwith-
standing, it can not be fairly said that the purchasing of the
blueprints and manuals is a direct and integral part of the
manufacturing and assembling of tractor engines. See
*General Motors Corp.* v. *Bowers* (1959), 169 Ohio St. 361,
365, 159 N. E. 2d 739.

Although the taxpayer relies on *Babcock, supra,* to
support his arguments, we find that case distinguishable.
In *Babcock,* this court held that blueprints and manuals
used in the production and assembling of equipment were
indispensable to and directly connected with the
actual manufacturing process. Babcock & Wilcox success-
fully argued that a blueprint in the hand of a production
worker while the product is being manufactured and while
that production worker is engaged in the production pro-

cess by following the instructions on the blueprint can be readily compared to a worker's use of a tool which is clearly excepted under those conditions. *Babcock, supra,* at page 255. On the other hand, this court held that where the taxpayer purchased Xerox machines to make copies of the blueprints for production personnel, such transactions were taxable in that the machines were not *directly* used or consumed in the production process. *Babcock, supra,* at pages 255-6.

Unlike the blueprints in *Babcock, supra,* the drawings and manuals in the present case are not used directly on the production line, *i. e.,* in the production of tractor engines. Rather, as in the instance of the Xerox machines, they are one step removed from the actual production process.

Therefore, this court holds that where a taxpayer buys engineering designs and service manuals to be used in connection with the repair and maintenance of machinery and equipment used directly in the production of tangible personal property for sale by manufacturing, such designs and manuals are not used directly in the manufacturing process and the purchase of such items is not excepted from the sales and use taxes pursuant to R. C. 5739.01(E)(2). Therefore, as to the second issue, the decision of the board is reversed.

The third issue before this court involves a claimed exception for the purchase of the Hydromation System from Ohio's tax on retail sales of tangible personal property. R. C. 5739.02, which provides for the levy of the tax states, in part:

"For the purpose of providing revenue * * * an excise tax is hereby levied on each retail sale made in this state."

R. C. 5739.01, a definitional section, provides, in part:

"(E) 'Retail sale' * * * include[s] all sales except those in which the purpose of the consumer is:

"* * *

"(2) * * * to use or consume the thing transferred directly in the production of tangible personal property * * * for sale by manufacturing, processing * * *.

"* * *

"(S,) 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."

The question presented to this court is whether the taxpayer's Hydromation System heretofore described is excepted from the sales tax of R. C. 5739.02 by reason of R. C. 5739.01(E)(2) and (S).

In *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 283 N. E. 2d 434, this court explained the "adjunct" exception in the following language:

"In order to obtain an exception from the sales tax pursuant to R. C. 5739.01(S), a claimant must show that the thing for which the exception is sought is an 'adjunct,' used in production to complete a product at the same location and after transformation or conversion has commenced, and, pursuant to R. C. 5739.01 (E)(2), must also show that the thing is an adjunct to direct use or consumption in production for sale."

The commissioner concedes that the Hydromation System fulfills the first two requirements as given in *Canton Malleable Iron Co., supra*: The system is an adjunct used at the same location as the manufacturing process, and it is used after the transforming or conversion has commenced. However, the commissioner and board assert that the system is not directly related to the use or consumption in the production process. This court agrees.

The commissioner has not attempted to tax any items on the production line or the coolant, which is consumed to some extent in the manufacturing process. The function of the Hydromation System is to save White Motor the expense of purchasing large quantities of the relatively expensive coolant. Economically, White Motor has decided that salvaging the used coolant by cleaning and recirculating it is

cheaper than the alternative of constantly using new coolant. Thus, while the apparatus on the production line which sprays the coolant upon the interface between the tool and the component is an "adjunct" to manufacturing, and the coolant is directly used or consumed in manfacturing, the recirculating system is not adjunct to items that are directly involved in the manufacturing process.

The board concluded as follows:

"* * * To be excepted as adjuncts, these items would need to be adjunct to items that are directly involved in the manufacturing process; that is, they would need be auxiliary or subsidiary to such primary items, supplementing the function of the items that are directly involved. The items of the recirculating system do not perform such a task. They merely deliver oil-coolant that can be regarded as either used directly or adjunct to some article that is used directly to the production line and do not aid or assist these delivered oil-coolants as these oil-coolants perform their function. The presence of the compounds at the point of manufacture is the *sine qua non* of manufacturing at that location, or without which the equipment at that location could not operate as facilely as if the compound were absent. The method of delivery to the point of manufacture is of no import once the oil-coolant has arrived 'and the lack of this particular and necessary nexus is fatal to the exception urged' * * *."

As to this issue, the court finds the board's determinations both reasonable and lawful.

In view of all the foregoing, the board's decision as to issues one and two is reversed. As to the third issue, the board's decision is affirmed.

*Decision reversed in part and affirmed in part.*

HERBERT, W. BROWN, STERN, SWEENEY and LOCHER, JJ., concur.

CELEBREZZE, J., concurs in the judgment.

STERN, J., retired, assigned to active duty under authority of Section 6(C), Article IV, Constitution, sitting for P. BROWN, J.