GENERAL MOTORS CORPORATION, CENTRAL FOUNDRY DIV., APPELLEE AND
CROSS-APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLANT AND
CROSS-APPELLEE.

[Cite as General Motors Corp. *v.* Lindley (1987),
32 Ohio St. 3d 158.]

(No. 86-680—Decided August 26, 1987.)

*Carlile, Patchen, Murphy & Allison* and *Robert J. Kosydar,* for appellee and cross-appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellant and cross-appellee.

*Per Curiam.* In his first proposition of law, appellant challenges the BTA's exemption of the sprue handling equipment under R.C. 5739.02(B)(16). This provision permits the exemption of handling and transportation equipment used in intraplant or interplant transfers of tangible property while in the process of production for sale by manufacturing. Appellant argues that the production process of the castings is complete once the excess sprue is removed. The sprue handling equipment which transports the excess sprue back to the beginning of the production process for reuse is said to perform a function after the manufacturing of a casting is completed.

At the time of the audit, former R.C. 5739.01(S) (now [R]) defined the term "manufacturing" as involving the transformation or conversion of a material into a different state or form from that in which it originally existed. While appellant's proposition is correct to the extent that the excess sprue is not utilized in the manufacture of the particular casting from which it was excised, the fact remains that the excess sprue will eventually be utilized in the manufacture of future castings after it has been returned to the charging buckets for reintroduction into the production process. As noted in the facts, recycled sprue makes up approximately fifty percent of the material to be melted down in the furnace. The melting of raw material in the furnace involves the transformation of shape and form and the remelting of excess sprue after it is removed from a completed casting entails another transformation of shape and form. Hence, excess sprue is in-process material which will undergo further manufacturing and the equipment which conveys the excess sprue back to the beginning of the production process is

properly exempt from sales and use taxation under R.C. 5739.02(B)(16).

Next, appellant questions the BTA's exemption of the battery recharging equipment. The BTA observed that the battery recharging equipment was used to generate power for the electric motors of the lift trucks which, in turn, were used to transport in-process materials within the foundry. The board concluded that this equipment qualified for exemption under Ohio Adm. Code 5703-9-21.

We find that the BTA's conclusion in this regard is misplaced. Ohio Adm. Code 5703-9-21, as it existed at the beginning of the audit period and as amended on November 18, 1978, did not exempt power generating equipment which provided power to operate transportation equipment.

Appellee seeks to convince this court that the battery recharging equipment should be exempted under a number of other exceptions. First, appellee argues that this equipment would be exempt pursuant to the use-on-use exemptions in former R.C. 5739.02(B)(25) (now R.C. 5739.02[B][26]) and Ohio Adm. Code 5703-9-21 (D). However, we find that the battery recharging equipment performs a function which is one step removed from the use-on-use exception. These provisions would provide a basis to exempt the lift truck equipment which transports the materials between the stages of conversion, but it would not apply to the equipment which recharges the lift truck batteries.

Appellee also argues essentially that this equipment may be considered as an adjunct to the manufacturing process under former R.C. 5739.01(S). In order for a piece of equipment to be considered as an adjunct to exempted machinery under R.C. 5739.01(E)(2), it must be used "during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced." (Former R.C. 5739.01[S].) The facts in this case demonstrate that the battery recharging equipment is utilized after the batteries have been removed from the truck.

Lastly, appellee proposes that this equipment could qualify for exemption under R.C. 5739.02(B)(16), which exempts handling or transportation equipment used to transfer tangible personal property while in the process of production for sale by manufacturing. We find appellee's attempt to characterize the battery recharging equipment as performing a handling or transportation function totally unfounded. The sole function of the battery recharging equipment is to regenerate the lift truck batteries.

In its first proposition of law on cross-appeal, appellee contends, *inter alia,* that the equipment which preheats the in-process material to approximately eight hundred degrees Fahrenheit should be considered as part of the manufacturing process under former R.C. 5739.01(S) and exempt from taxation under R.C. 5739.01(E)(2).

The BTA denied exemption of this equipment on the basis that it performed a function which was preliminary and preparatory to the actual manufacturing process. We disagree with this perception. The preheating process signifies the beginning of the transformation or conversion of the in-process material. At eight hundred degrees Fahrenheit, the sprue begins to somewhat soften and smaller pieces begin to glow. Upon reaching this temperature the material is conveyed directly to the furnace where the heating continues until the material becomes molten. We find that the heating of the in-process material is a continuous process and

that the heating which takes place during the preheating stage is to such a substantial degree as to qualify for exemption under R.C. 5739.01(E)(2).

In its final proposition of law on cross-appeal, appellee seeks to exempt the sand recovery equipment which returns the sand used to fashion the casting molds to the blending drum for reuse. In denying the exemption of this equipment, the BTA ruled that the various conveyor belts which make up appellee's sand system were not part of a single, cohesive and integrated unit, but could be broken down into different equipment which served different functions. Hence, each unit could be considered separately for purposes of taxation. *Southwestern Portland Cement Co.* v. *Lindley* (1981), 67 Ohio St. 2d 417, 21 O.O. 3d 261, 424 N.E. 2d 304. The BTA ultimately found that the sand recovery system was used to transport sand from the place where the manufacturing process had ended to the point where the moldmaking process began.

Appellee argues that its moldmaking equipment should be treated as a single piece of equipment. In support, appellee relies primarily upon this court's judgment in *Timken Co.* v. *Kosydar* (1977), 52 Ohio St. 2d 131, 6 O.O. 3d 345, 369 N.E. 2d 1211, wherein it was held that equipment utilized in several closed liquid and gas recirculation systems should be treated as a single unit for tax purposes.

In reviewing this proposition of law, this court is cognizant of its limited role in considering appeals from the BTA. It is not this court's function to substitute its judgment for that of the BTA on factual issues, but only to determine from an examination of the record whether the decision reached by the board is unreasonable or unlawful. *Maumee Valley Broadcasting Assn.* v. *Porterfield* (1972), 29

Ohio St. 2d 95, 58 O.O. 2d 192, 279 N.E. 2d 863; *Brennan* v. *Bd. of Tax Appeals* (1963), 175 Ohio St. 263, 25 O.O. 2d 35, 193 N.E. 2d 700. We find that the evidence in the record amply supports the BTA's decision. Appellee's moldmaking equipment may be broken down into three operations performing separate and distinct functions. The first prepares the sand and forms the molds; the second takes the molds to the pouring area; and the third returns the sand used to make previous molds to the blending drum where it will be used in the first system. Although this is a continuous process, each operation involves different equipment and performs a different function.

Lastly, appellee argues that the sand recycling equipment should be exempt from taxation pursuant to the use-on-use exception in former R.C. 5739.02(B)(25). In order to qualify for exemption under this provision, appellee must establish that its sand recycling equipment is used or consumed in the manufacture of tangible personal property which is then utilized directly in the manufacture of the final product for sale. Appellee's sand recycling equipment merely transports the used sand back to the blending drum for reuse. This equipment simply does not perform a function which entails a manufacturing process.

For the reasons set forth in this opinion, we affirm that part of the decision of the BTA granting an exemption for the sprue handling equipment and denying exemption for the sand recycling equipment. However, we reverse that part of the decision of the BTA denying exemption for the preheating equipment and granting exemption for the battery recharging equipment as being unreasonable and unlawful. The preheating equipment is properly exempt under R.C.

5739.01(E)(2), and the battery recharging equipment is not exempt under Ohio Adm. Code 5703-9-21, R.C. 5739.01(E)(2), former R.C. 5739.01(S) or former R.C. 5739.02(B)(25).

*Decision affirmed in part and reversed in part.*

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., concurs in part and dissents in part.

HOLMES, J., concurring in part and dissenting in part. I concur generally in the majority opinion, but dissent from the conclusion that the battery charging equipment would not be tax exempt. These electrical units should be exempt in that they are an integral part of the electric mobile units. Without power the latter could not operate to transport the materials, indeed becoming immobile mobile units. Being an integral part of the transporting units, the chargers should be afforded the same tax treatment of exemption.