GENERAL MOTORS CORPORATION, CHEVROLET MOTOR DIVISION, APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as General Motors Corp. *v.* Limbach (1988), 37 Ohio St. 3d 271.]

(No. 87-283—Submitted April 12, 1988—Decided July 6, 1988.)

*Carlile, Patchen, Murphy & Allison* and *Robert J. Kosydar,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Mark A. Engel* and *Richard C. Farrin,* for appellee.

*Per Curiam.*

## I

### Conveying Equipment

Appellant-taxpayer argues that the conveying equipment is part of a system that produces a saleable product. It argues that the equipment is excepted from sales and use taxes under R.C. 5739.01(E)(2) or 5739.02(B)(16).

R.C. 5739.02 taxes all retail sales made in Ohio.[1] R.C. 5739.01(E)(2) excepts sales where the consumer's purpose is "* * * to use or consume the thing transferred directly in the production of tangible personal property * * * for sale by manufacturing, [or] processing * * *."

During the audit period, "manufacturing" or "processing" was defined in R.C. 5739.01(S) (now amended and renumbered [R]) as:

"* * * [T]he transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such

transforming or converting has commenced."

In *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, 5 O.O. 2d 3, 149 N.E. 2d 1, this court announced in the syllabus that the physical test to be used to determine whether tangible personal property is used or consumed *directly* in the excepted manner is: "* * * [W]hen does the actual manufacturing or processing activity begin and end, and is the property used or consumed *during and in the manufacturing or processing period.*" (Emphasis *sic.*)

In *Ford Motor Co.* v. *Limbach* (1987), 32 Ohio St. 3d 136, 512 N.E. 2d 658, we determined that similar scrap metal handling and conveying equipment was not exempt. We held that the taxpayer's sole purpose for running the stamping equipment was to produce automotive stampings for incorporation into automobiles and trucks. Although the taxpayer sold the scrap metal that resulted from the stamping operation, we held that the transformation that took place in the stamping press related to production of automotive stampings and not scrap metal. The scrap metal was the raw material for baled scrap, and it did not undergo transformation until it was compressed in the baling facility. Thus, the equipment conveying the scrap metal to and from the baling facility was not used directly in manufacturing. There were two operations: automobile manufacturing and scrap metal processing. At the stamping operation the automobile manufacturing continued while the raw material for the baling operation, the scrap metal, was created.

Equipment that conveys material to or from a processing operation is not used directly in manufacturing. *McWood Corp.* v. *Porterfield* (1968), 13 Ohio St. 2d 143, 42 O.O. 2d 368, 235 N.E. 2d 236. Equipment that conveys

---

[1] Since R.C. 5741.02(C)(2) provides a concomitant use tax exception, only sales tax exceptions will be discussed.

scrap to and from a baling operation is not used directly in manufacturing. *American Compressed Steel Corp.* v. *Peck* (1953), 160 Ohio St. 207, 52 O.O. 24, 115 N.E. 2d 153. The equipment under review in the instant case, which conveyed the scrap metal to and from the crushing and baling operations, is not used directly in manufacturing and, therefore, is not excepted.

Appellant also argues that this equipment is used in interplant transfers of in-process material and is exempt under R.C. 5739.02(B), which provides in part:

"The tax does not apply to the following:

"* * *

"(16) Sales to persons engaged in manufacturing, processing, assembling, or refining, of handling and transportation equipment, except motor vehicles licensed to operate on the public highways, used in intraplant or interplant transfers or shipments of tangible personal property in the process of production for sale by manufacturing, processing, assembling, or refining, where the plant or plants within or between which such transfers or shipments occur are operated by the same person[.]"

Appellant maintains that most of the scrap metal is transferred to appellant's other plants for melting and further use in manufacturing. The evidence shows that appellant transferred the scrap metal to General Motors-Canada, General Motors-U.S.A., Chevrolet-affiliated concerns, and outside purchasers.

Even if we agreed with appellant that these were interplant transfers (and this agreement would extend only to the equipment used after the baling and crushing operations), we would not allow exemption. In *White Motor Corp* v. *Kosydar* (1977), 50 Ohio St. 2d 290, 296, 4 O.O. 3d 451, 454, 364 N.E. 2d 252, 255-256, this court noted that parent and subsidiary corporations are separate and distinct legal entities and that a subsidiary is not the same person as the parent corporation. This court held that a transfer from a subsidiary to a parent corporation was not an interplant transfer between "plants operated by the same person."

In the instant case, appellant did not describe sufficiently the relationship between the Chevrolet Motor Division, from which the scrap metal came, and the other plants, to which it went. In fact, appellant's witness, who had compiled the transfer information, made no distinction between General Motors-Canada as a separate corporation from General Motors-U.S.A. To him, all the entities were owned by appellant, and their relationships were of no concern. Appellant did not sufficiently establish that the transfers were between two plants "operated by the same person"; thus, the conveying equipment is not exempt for this reason.

II

Engineering Drawings

Appellant next argues that the engineering drawings, delivered with the customized machinery, and used by it to install, repair, and maintain the machinery, are excepted under the direct use exception or the "use-on-use" exemption. Alternatively, appellant argues that the drawings are personal or professional services and are excepted under R.C. 5739.01(B).

We reject these arguments on the basis that *White Motor Corp.* v. *Kosydar, supra,* is dispositive. The drawings, thus, are not exempt personal or professional service transactions.

*White Motor* also answers appellant's argument that these drawings were used directly in manufacturing. In *White Motor,* we distinguished *Babcock & Wilcox Co.* v. *Kosydar*

(1976), 48 Ohio St. 2d 251, 2 O.O. 3d 416, 358 N.E. 2d 544, in which similar drawings were excepted. The drawings in *Babcock & Wilcox* were used by the vendor's production workers to assemble the equipment that was sold. White Motor, however, used the drawings to maintain the machinery and did not manufacture the equipment. Thus, White Motor did not use the drawings directly in manufacturing. We held that this use by White Motor was one step removed from actual production. Our holding is the same today. Appellant did not use these drawings directly in manufacturing.

Finally, we held in *General Motors Corp.* v. *Lindley* (1987), 32 Ohio St. 3d 158, 512 N.E. 2d 660, that to qualify for the use-on-use exemption,[2] the taxpayer must establish that its equipment is used or consumed directly in the manufacture of other tangible personal property that is used directly in the manufacture of the final product for sale.

Appellant, here, did not use these drawings to produce anything; it used them to install, repair, and maintain the equipment. As we stated in *White Motor, supra,* this is one step removed from production. Appellant's use is not a direct use in producing for use or consumption other tangible personal property that is used in producing the final product.

The BTA's decision, being neither unreasonable nor unlawful, is hereby affirmed.

*Decision affirmed.*

MOYER C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS AND H. BROWN, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. I believe the majority has misapplied R.C. 5739.02(B)(26) to the facts of this case and, therefore, I respectfully dissent.

R.C. 5739.02(B)(26) excludes certain sales from the sale tax. The exclusion encompasses sales made to manufacturers of tangible property for *use* directly in the production of tangible property, which will in turn be used in the production of inventory to be sold by the manufacturer. This is known more commonly in the trade as the "use-on-use" exception.

The evidence is clear that the engineering drawings at issue were used by appellant not only in the installation and maintenance of equipment but also to *manufacture* components of production equipment. The production equipment was indisputably used directly by appellant in the production of material and parts, *i.e.,* automotive parts, for incorporation into tangible personal property for sale, *i.e.,* finished automobiles. Therefore, the sale of the drawings should have been excluded from Ohio's sales tax based on the "use-on-use" exception.

In support of its conclusion, the majority relies on *White Motor Corp.* v. *Kosydar* (1977), 50 Ohio St. 2d 290, 4 O.O. 3d 451, 364 N.E. 2d 252. Indeed, the majority claims *White Motor* is

---

[2] R.C. 5739.02(B)(25) (now [26]) states: "(B) The tax does not apply to the following:

"* * *

"(25) Sales to persons engaged in manufacturing, processing, assembling, or refining, of tangible personal property for use or consumption directly in the production by manufacturing, processing, assemb-

ling, or refining of other tangible personal property for use or consumption directly in the production of tangible personal property for sale by manufacturing, processing, assembling, or refining; and of material and parts for incorporation into any such tangible personal property for use or consumption in production[.]"

"dispositive" of the claim. I find the majority's reliance on *White Motor* to be very curious since the case does not discuss R.C. 5739.02(B)(26). Indeed, the case deals with the application of R.C. 5739.02(B)(16) which excludes sales of handling and transportation equipment. Moreover, the "use-on-use" exception did not exist at the time *White Motor* was decided. The majority's reliance on *White Motor* as dispositive of the claim is obviously misplaced.

Finally, I believe the sale of engineering drawings falls under the personal service exclusion found in R.C. 5739.01(B)(5). For this proposition, I believe *White Motor* directly supports appellant's view. Indeed, in *White Motor* we said that personal service means an act done personally by an individual; it is, in effect, an economic service involving either the intellectual or manual personal effort of an individual, and is not the saleable end-product of his skill. Applying this proposition to the facts before us, I conclude that the engineering drawings were economic services and hence not taxable.

For the reasons stated above, I would reverse the BTA.