STEIN, INC., APPELLANT, *v.* TRACY, TAX COMMR., APPELLEE.

[Cite as *Stein, Inc. v. Tracy* (1999), 84 Ohio St.3d 501.]

502

(No. 97–2520—Submitted July 30, 1998—Decided February 24, 1999.)

*Buckingham, Doolittle & Burroughs, L.L.P., Steven A. Dimengo* and *David L. Drechsler,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Phyllis J. Shambaugh,* Assistant Attorney General, for appellee.

---

***Per Curiam.*** Stein first contends that purchases of the slag-a-ways, which transport molten slag and scrap from the steel companies' plants to Stein's reclamation area, and of related supplies are exempt under former R.C. 5739.02(B)(16). During the audit period in question,[1] that statute provided exemptions for:

"Sales to persons engaged in manufacturing, processing, assembling, or refining, of handling and transportation equipment * * * used in intraplant or interplant transfers or shipments of tangible personal property in the process of production for sale by manufacturing, processing, assembling, or refining, where the plant or plants within or between which such transfers or shipments occur are operated by the same person." 141 Ohio Laws, Part II, 3289.

Stein also cites former Ohio Adm.Code 5703–9–21(E) and (F), which exempted material handling and transportation equipment used to "transport items in the process of production for sale by manufacturing [or] processing * * * within a plant or between two plants operated by the same person." 1980–1981 Ohio Monthly Record 693.

In *Gen. Motors Corp. v. Lindley* (1987), 32 Ohio St.3d 158, 512 N.E.2d 660, we granted exemption to a handling system that returned metal that had overflowed during a casting operation to the beginning of production for reuse. Stein asserts that its reclamation process is analogous to the materials handling system in *Gen. Motors.* Stein contends that, because its plants are located on property owned by the steel companies, and because it takes slag and scrap from one area of the steel plant and returns a portion of that material to another area of the steel plant, it transports the material "within one steel plant." We disagree.

Stein overlooks the language contained in both the statute and the Ohio Administrative Code. The transportation must be within or between "plants operated by the same person." In *White Motor Corp. v. Kosydar* (1977), 50 Ohio St.2d 290, 296, 4 O.O.3d 451, 454, 364 N.E.2d 252, 255–256, we held that transportation between a plant owned by a parent corporation and a plant owned by its wholly owned subsidiary was not transportation between plants operated by the same person within the meaning of R.C. 5739.02(B)(16).

---

1. Although the Tax Commissioner assessed both sales and use taxes against Stein, we will discuss only the sales tax exemptions. See R.C. 5741.02(C)(2).

The location of Stein's plants on property owned by the steel companies is irrelevant. Stein and the steel companies are separate entities, and Stein's plants are separate from those of the steel companies. Thus, transportation between the steel companies' plants and Stein's plants is not transportation within one plant operated by the same person.

As to the equipment it purchases and provides with operators to steel companies, Stein presents two alternate claims. First, Stein contends that it resells this equipment to the steel companies and the equipment is, therefore, exempt under the sale-for-resale exemption. Alternatively, Stein contends that the steel companies use its equipment and operators in manufacturing steel for sale.

R.C. 5739.01(E)(1) provides an exception from the sales tax where the purpose of the consumer is "[t]o resell the thing transferred * * * in the form in which the same is, or is to be, received by him." In turn, the definition of "sale" contained in R.C. 5739.01(B)(1) includes "[a]ll transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted." Stein contends that it transfers possession of the equipment and operators to the steel companies for a fee. We disagree.

Stein's employees operate the equipment in question. Operators of the equipment in question always remain Stein employees. Thus, the equipment remains under the control and possession of a Stein employee. The steel companies may direct when and where the equipment and operators are used, but Stein's employees remained in actual possession of the equipment, and Stein did not transfer possession of the equipment to the steel companies.

Stein also contends that its purchases of the equipment it furnishes to the steel company with operators are exempt as used directly in manufacturing steel for sale. With this we agree.

R.C. 5739.01(E) excepted from the definition of "taxable sales" those for which "the purpose of the consumer is: * * * (2) * * * to use or consume the thing transferred directly in the production of tangible personal property * * * for sale by manufacturing." 141 Ohio Laws, Part II, 3281.

In *Apex Powder Corp. v. Peck* (1954), 162 Ohio St. 189, 55 O.O. 95, 122 N.E.2d 693, the contractor-taxpayer purchased drilling and blasting equipment that it used to drill and blast in mines operated by others. The commissioner argued that since the contractor did not sell the minerals which it drilled and blasted, its purchases of equipment were taxable. The parties in *Apex* stipulated that the owners of the minerals sold the minerals that were drilled and blasted by Apex.

On the other hand, Apex argued that its equipment was used directly in the production of tangible personal property for sale by mining. Apex further

contended that the statute did not require that the tangible property produced must be sold by the consumer.

We agreed with Apex. We ruled that the statute requires only that the consumer have the purpose to use the thing transferred directly in the production of tangible personal property for sale. Otherwise, "we would be reading into the statute words which the General Assembly did not put into the statute." *Id.* at 192, 55 O.O. at 97, 122 N.E.2d at 694. We further stated, "We do not believe that the words which the General Assembly used can justify an inference that it intended that the 'production * * * for sale' should describe only a production for sale by the consumer whose 'purpose' is involved." *Id.* We see no difference between *Apex* and the factual situation in the present case.

The Tax Commissioner argues that our decision in *Gen. Motors Corp. v. Kosydar* (1974), 37 Ohio St.2d 138, 66 O.O.2d 304, 310 N.E.2d 154, which cites *Apex,* should control our decision here. However *Gen. Motors Corp.* is factually different. In *Gen. Motors Corp.,* the purchased equipment at issue was being used by an outside supplier, not by the consumer, General Motors. We recognized this distinction in *Gen. Motors Corp.,* stating that "the word 'directly' can only be interpreted as requiring a direct use or consumption by the consumer of the transferred property." *Id.* at 145, 66 O.O.2d at 308, 310 N.E.2d at 158. The BTA decision on this issue is unlawful and is therefore reversed.

For all the foregoing reasons, the decision of the Board of Tax Appeals is affirmed in part and reversed in part.

*Decision affirmed in part*
*and reversed in part.*

MOYER, C.J., RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.
PFEIFER, J., concurs in part and dissents in part.

DOUGLAS, J., dissents.

------

**PFEIFER, J., concurring in part and dissenting in part.** I concur with the majority's determination that the equipment that Stein furnishes to the steel companies along with operators is exempt from tax under former R.C. 5739.01(E).

The majority also determines that the slag-a-ways and related supplies are not exempt from tax under former R.C. 5739.02(B)(16). If the slag-a-ways were owned by the steel companies and operated exactly as they are now, they would be exempt from tax. There is no sensible reason for this distinction. To the

extent the statute requires the answer the commissioner gives, which the majority affirms, I would sever the clause "where the plant or plants within or between which such transfers or shipments occur are operated by the same person" from the statute as a violation of equal protection. Is there any other way to treat a situation where the same equipment is operated on the same property in the same manner for the same purpose and yet is subject to tax based on who owns it? I dissent from this portion of the majority opinion.