No. 24300.

STATE OF COLORADO, DEPARTMENT OF REVENUE AND JOHN H. HECKERS, EXECUTIVE DIRECTOR THEREOF *v.* MODERN TRAILER SALES, INC., A COLORADO CORPORATION.
(486 P.2d 1064)

Decided July 6, 1971.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Harold L. Neufeld, Assistant, for plaintiffs in error.

Lattimer, Robb & Naylor, Eugene T. Halaas, Jr., for defendant in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

The Department of Revenue of the State of Colorado is in this court seeking to reverse a judgment of the trial court holding that Modern Trailer Sales is entitled to refund of sales taxes paid on certain installment sales of mobile homes. We will refer to the plaintiff in error, the Department of Revenue, as the Department, and to defendant in error as the Dealer. We hold the trial court erred, and reverse the judgment.

The facts are stipulated. Modern Trailer Sales is licensed as a motor vehicle dealer engaged in selling new and used mobile homes. The sale of the mobile homes is usually on note and chattel mortgage which are discounted to a Pueblo bank, but which the dealer guarantees in the event of default. On each sale the total

sales tax is charged to the purchaser at the time of the sale and a receipt is issued to the purchaser showing full payment of the sales tax. Transfer of title to the vehicle is made at the time of the sale pursuant to statutes regulating the sale and transfer of motor vehicles, including mobile homes. Title will not issue to the vehicle except on showing of the payment of the full sales tax. If the Dealer did not collect the tax, the purchaser must pay it direct to the state in order to obtain title.

 In a period of a little over three years extending from April 1964 through August 1967, the Dealer began taking various credits on its remittances of sales tax to the Department. The claimed credits were calculated on the deficiency remaining on installment notes which had become delinquent and which the Dealer took back from the bank and on which the Dealer had repossessed the mobile homes. The Department disallowed the credits being taken by the Dealer and after administrative hearing determined the Dealer to be deficient in sales taxes unremitted in the amount of $6,047.96. The district court reversed the Department's deficiency assessment and entered judgment allowing the claimed credits, and ordered the deficiency assessment including interest and penalties set aside. We hold the trial court was in error and reverse.

The district court judgment in favor of the Dealer was based on an argument by the Dealer presented there and here that the credits taken in the case of repossessed mobile homes are allowable both by statute and Department of Revenue rules and regulations. The statute relied on is C.R.S. 1963, 138-5-2(13), which provides, in part:

"On all sales at retail, valued in money, when such sales are made under conditional sales contract, or under other forms of sale where the payment of the principal sum thereunder be extended over a period longer than sixty days from the date of sale thereof, only such portion of the sale amount thereof may be counted for

the purpose of imposition of the tax imposed by this article as has actually been received in cash by the taxpayer during the period for which the tax imposed by this article is due and payable. Taxes paid on gross sales represented by accounts found to be worthless and actually charged off for income tax purposes may be credited upon a subsequent payment of the tax herein provided, but if any such accounts are thereafter collected by the taxpayer, a tax shall be paid upon the amounts so collected." *Id.*

Relying in part on Department Rule 20, the Dealer contends that the foregoing language authorizes a "taxpayer" reporting on an accrual basis to utilize appropriate credits for taxes previously paid in full upon worthless accounts.

Rule 20 reads as follows:

*"Cash and accrual basis.* There are two different methods which may be used in the preparation of sales tax returns in determining the amount of sales tax due, (a) Cash Basis, and (b) Accrual Basis. In calculating and remitting sales tax upon the sale of articles sold for cash or on the time payment plan, conditional sales or chattel mortgages, one of the following methods of procedure must be applied:

"(a) On the cash basis, the vendor makes return and remits the sales tax on the basis of the cash actually received from taxable sales and collections made during the month reported. Then each month thereafter he must make return and remit the tax on each subsequent payment as made or collected. When the vendor on conditional and installment sales negotiates or sells the finance paper, the vendor is deemed to have received the full balance of the consideration for the sale of the tangible personal property and is liable for the remittance of the sales tax on the total sales price at the close of the month during which the paper has been assigned, negotiated or sold.

"(b) On the accrual basis, the vendor pays the sales tax

to the Director of Revenue in the total amount due the State. The sales tax that the State requires is two per cent of the actual purchase price (which under the act includes the fair market value of any article traded-in and not held for resale in the usual course of the retailer's business). The vendor remits to the Director of Revenue the entire two per cent sales tax on the full purchase price of the article. * * *"

Therefore, argues the Dealer, under C.R.S. 1963, 138-5-2(13) as interpreted by Rule 20, the taxpayer who elects to report on a cash basis is able thereby to limit his sales tax liability to "only such portion of the sale amount * * * as has actually been received in cash by the taxpayer * * *." C.R.S. 1963, 138-5-2(13). Thus, the cash basis taxpayer would never be entitled to utilize the credit for sales taxes previously paid on worthless accounts because a cash basis taxpayer is not required to include in a remittance sales taxes on the unreceived or uncollected portion of the full purchase price.

The situation of the accrual basis taxpayer is otherwise who, of course, assumes sales tax liability (and must remit accordingly) upon the full purchase price of every transaction regardless of whether he has received cash for the full purchase price or extended credit for the full purchase price. The legislature, the Dealer submits, equalized the sales tax liability of both cash and accrual basis taxpayers by providing the accrual basis taxpayers with the right to claim a credit for taxes paid on "gross sales represented by accounts found to be worthless and actually charged off for income tax purposes * * *." C.R.S. 1963, 138-5-2(13). The Dealer then asserts that his right to recover under the above rationale does not depend upon, and is in fact exclusive of, any authorization by the Department, the time of passage of title, the type of financing, or the negotiation of finance papers.

We cannot agree with the Dealer's rationale because it fails to take into consideration the fact that dealers

in motor vehicles are excluded from Rule 20 of the Department and are dealt with under another rule providing:

"Since in the sale of a motor vehicle title passes at the time of purchase, the full amount of the sales tax must be paid to obtain registration license. No refund is allowed on repossession of a motor vehicle." Department of Revenue, Rule 21 (1956).

Rule 21 is an administrative interpretation of the following statute:

"Tax on motor vehicles — license —

(1) No registration license shall be issued by the director of revenue or any county clerk and recorder * * * unless and until the tax upon the sale and purchase of such vehicle, as provided by sections 138-5-5 to 138-5-13, has been paid. No transfer of title * * * shall be issued by the director of revenue or county clerk and recorder unless and until the tax upon the sale and purchase of such vehicle, as provided in sections 138-5-5 to 138-5-13, has been paid. It shall be the duty of the director of revenue to promulgate such rules and regulations as he may deem necessary for the proper certification to the director of revenue that such tax has been paid. * * *" C.R.S. 1963, 138-5-13.

The statutory provisions and Department rule which we hold controlling refer to and extend to mobile homes of the type here in question. The statute is Chapter 13 of the Colorado Revised Statutes (1963) wherein reference is made throughout to trailers and mobile homes under the general title of "Automobiles and Other Motor Vehicles." Article 3 of this chapter requires that trailer coaches and mobile homes be registered, taxed, and licensed *in the same manner* as automobiles. C.R.S. 1963, 13-6-2(2) includes in the definition of "motor vehicles" trailers and trailer coaches. This section provides for a certification of title on all vehicles (including trailer coaches) and sets forth the manner in which vehicles may be sold, transferred and mortgaged. C.R.S. 1963,

13-11-2(2) likewise defines trailers as motor vehicles and requires all who sell the same to be licensed as automobile dealers.

Therefore, for purposes of registering, taxing, licensing, transferring, selling, and mortgaging, trailer coaches and mobile homes have been expressly treated by the legislature as motor vehicles. The sales tax statutes specifically provide for a tax upon motor vehicles, C.R.S. 1963, 138-5-13, and we conclude that mobile homes are meant to be included as motor vehicles under such provisions.

We also note that the titles of the two statutes which the plaintiff urged be not applied to mobile homes because of internal references *inter alia* to "automotive vehicles" have as their titles the following: C.R.S. 1963, 138-5-13, "Tax on motor vehicle-license," and C.R.S. 1963, 138-5-40, "Tax on motor vehicles."

Interpreting the statutes pertaining to the payment of sales tax by motor vehicle and mobile home owners, and taking into consideration the general statutory scheme, we note that in Colorado the sales tax is levied upon the sales transaction, and not upon the property transferred. The burden of paying the tax falls upon the purchaser or consumer, and is based upon a percentage of the consideration paid by such purchaser. The Colorado sales tax is not imposed on the dealer who is simply the state's agent to collect. *Bedford v. Hartman Brothers, Inc.*, 104 Colo. 190, 89 P.2d 584 (1939).

Thus, under the provisions of the above statute, in the case of motor vehicles, the entire sales tax must be collected and remitted at the time of the sale, regardless of whether the taxpayer reports on a cash or accrual basis. If the tax is not paid, title cannot transfer and the vehicle may not be registered as provided for by law. As a result of this requirement, retailers issue a receipt to a purchaser showing sales taxes to have been paid, and thus allowing the purchaser to register his vehicle. The purchaser may also, if he wishes, remit his tax

directly to the Department of Revenue. C.R.S. 1963, 138-5-13. No such alternative provision exists in the case of the installment sale where title does not pass until the entire sales price has been paid.

It necessarily follows that the sales tax is paid by the purchaser of a motor vehicle in full from the first monies paid; from the down-payment at the time of sale, if it is sufficient, or from the proceeds of the financing. These amounts, equal to the full amount of the sales tax, are collected by the dealer/vendor and become public funds at the time they come into his hands. The title and registration are issued to the purchaser on the basis of this collection.

Title having passed and the entire tax having been paid by the purchaser at the time of the sale (either directly or out of the first money paid to the dealer), we perceive no disadvantage to either cash or accrual basis taxpayers. Both categories of taxpayers must see that the purchaser's tax is paid immediately upon sale, and it would be illogical to provide the windfall to the dealer who has paid nothing to the state out of the transaction.

In concluding that C.R.S. 1963, 138-5-2(13) is limited to those installment sales in which title is not required by law to be transferred at the time of sale, we note that it has been held in other jurisdictions that no entitlement to a refund of sales tax exists on repossessions of specific types of property unless expressly provided for by statute. *Bigsby v. Johnson*, 18 Cal.2d 860, 99 P.2d 268 (1940); *Wurlitzer v. State Board of Tax Administrators*, 281 Mich. 558, 275 N.W. 248 (1937); *Montgomery Ward & Co. v. Fry*, 277 Mich. 260, 269 N.W. 166 (1936); *Olympic Motors, Inc. v. McCrosky*, 15 Wash.2d 665, 132 P.2d 355 (1942).

The judgment is reversed and the cause remanded with directions to reinstate the deficiency assessment of the Department and to enter judgment for the amount plus accrued statutory interest.