**MONTGOMERY WARD & CO., INC.,**
**Plaintiff-Appellant,**

v.

**STATE of Colorado, DEPARTMENT OF REVENUE and Alan Charnes, Executive Director, Defendants-Appellees.**

No. 28396.

Supreme Court of Colorado,
En Banc.

March 16, 1981.

Rehearing Denied June 1, 1981.

Ireland, Stapleton & Pryor, P.C., Benjamin F. Stapleton, Edward O. Byrne, Denver, Jerome J. Lutz, Chicago, Ill., for plaintiff-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Chris J. Eliopulos, Sp. Asst. Atty. Gen., Denver, for defendants-appellees.

ERICKSON, Justice.

The primary issue in this case is whether, under the "Emergency Retail Sales Tax Act of 1935," article 26 of title 39, C.R.S.1973 (Sales Tax Act), the Executive Director (Director) of the Department of Revenue (Department) can force Montgomery Ward & Co., Inc. (Wards) to abandon its use of the cash receipts basis for paying sales tax on credit sales and require it to use the accrual basis for paying said tax.

As the result of an audit, the Department served Wards with a notice of deficiency and tax assessment. Additionally, the Director issued a revocation which withdrew Wards' permission to use the cash receipts basis for remitting sales tax. After a hearing, the Director issued his final determination and assessment. Wards filed an appeal in the district court challenging the assessment and actions of the Director, and the district court affirmed. Wards appealed to the court of appeals. Based on the representation of the Department of Revenue that this case presents legal issues of major significance, the court of appeals certified the case to this Court. We accepted jurisdiction and now affirm the judgment of the district court.

Wards' credit accounts are in the form of a revolving charge account. Under the agreement signed by the customer at Wards, the customer may pay off the entire amount of the charge within 30 days or elect to make payments over an extended period of time. In 1964, Wards requested permission from the Department of Revenue to change its method of paying Colorado sales tax from the accrual basis to the cash receipts basis. C.R.S. '53, 138–6–11 (now section 39–26–111, C.R.S.1973). A retailer using the accrual basis must at the time of a credit sale pay the entire amount of sales tax due on that sale. On the other hand, a retailer using the cash receipts basis waits until the customer actually pays the tax and then remits that sum to the state.

Wards' 1964 request to the Department set forth that:

"Title to some or all of our Accounts Receivable may, from time to time, be transferred to our wholly owned subsidiary, the Montgomery Ward Credit Corporation. The parent corporation will continue to administer the accounts and make collections. We respectfully request that such transfers to the subsidiary not be treated as actual disposition of such receivables so long as title is retained in the subsidiary. . . ."

The Department granted Wards the right to use the cash receipts basis in a letter which stated: "Permission is herewith granted to make the change in the method of reporting from the sales basis to the cash receipts basis, effective January 1, 1964. . . ."

Subsequent to obtaining permission from the Department to change its method of reporting and paying sales tax to the cash receipts basis, Wards began selling a large percentage of its accounts receivable to Montgomery Ward Credit Corporation (Credit Corporation), a wholly owned subsidiary.

Thereafter, Wards established the following method for computing the amount of sales tax to be remitted monthly to the state. At the end of each month Wards calculated its total gross taxable sales, both cash and credit. Wards then determined the difference between the prior month's accounts receivable beginning and ending balances. The difference in the prior month's accounts receivable balance was then subtracted from the gross taxable sales. Sales tax was then remitted to the state based on the resulting balance. Any increase in the accounts receivable would mean an excess in credit sales over and above collection for a particular month with

a decrease of the balance on which sales tax is computed and remitted. Conversely, any decrease in accounts receivable would mean an excess in collections over credit sales thereby increasing the balance on which sales tax is computed and remitted.

Significantly, the accounting method used by Wards did not attempt to reflect the actual amount paid by customers on particular items or components in a credit account of a customer at the time a payment was made. The accounting procedure also did not make allowance for non-taxable items included in the accounts receivable. Wards' procedure was to apply any payment made by a credit customer first to finance charges and then on a pro rata basis towards the payment of other charges on the account.[1] By charging a finance fee on the balance of the account, Wards collects interest on a sales tax liability that has not been paid.

The Department commenced an audit of Wards in September, 1975. Following the audit, a notice of deficiency was served on Wards showing additional sales tax due, as of February 29, 1976, of $2,105,924.46. The Department's deficiency determination was based on the following facts: (1) The sale of accounts receivable triggered the requirement to pay the sales tax on the entire amount due on the sale. See 1 Colorado Code of Regulations, Regulation 138–5–11 (hereinafter Regulation 138–5–11, C.C.R.). (2) Wards' method of remitting sales tax was based on assumptions and estimates and not on the basis of cash actually received. (3) The effect of not making allowances for non-taxable items (finance charges, state and local sales taxes, insurance sales, installation charges and service charges are exempt from a sales tax) was to defer and delay the remittance of sales tax to the state on taxable items when Wards has been paid the sales tax on such items by its customers.

Between the time period when the audit commenced and service of the notice of deficiency, Wards remitted an additional $260,282.80 in its February return. The additional sales tax was remitted after the auditor expressed concern that non-taxable items were included in Wards' method of estimating its taxes. The $260,282.80 sum was based upon an estimate by Wards' national sales tax manager to reflect that approximately 11% of the total receivables were non-taxable items.[2]

After service of the notice of deficiency, Wards filed a timely protest and the matter came on for hearing before the Director of the Department of Revenue. The Director entered a final determination sustaining the Department's assessment and imposed a penalty of $41,881.86, plus interest of $15,735.27 on the $260,282.80. The Director specifically found that Wards had "employed a method that effectively deferred payment to Colorado of sales tax due not in accordance with the statutes and regulations thereunder." Additionally, by letter dated January 28, 1977, the Director revoked Wards' permission to remit sales tax on the cash receipts basis. See section 39–26–111, C.R.S.1973.

Wards appealed and a trial de novo was held in the district court. The district court upheld the Director's final determination except as to the penalty and interest that had been assessed. In its conclusions of law regarding the issue relating to the $260,282.80 sum remitted by Wards to the state in its February, 1976 return, the court declared:

"The Court finds that although the method used by the plaintiff [Wards] in computing the tax was not authorized by statute, the fact that the Department consulted with representatives of plaintiff as to a proper percentage to use in determining non-taxable items, no penalty should be assessed against the plaintiff. The Department tacitly approved

---

1. Wards' "Charg-All Credit Agreement" provides: "For items purchased on different dates, the first purchased will be considered the first paid for."

2. Wards' national sales tax manager stated that his actual estimate of non-taxable items was 8.97%, however, the 11% figure was used as a "safety margin" to cover seasonal fluctuations.

the procedure although not agreeing to the percentage. The Court further concludes that the penalty should not be assessed because it was on a payment that had been made prior to the penalty being assessed."

Wards raises the following issues on appeal: (1) Whether the Director's revocation is void for non-compliance with the Administrative Procedure Act, article 4 of title 24, C.R.S.1973. (2) Whether the transfer of accounts receivable from Wards to Credit Corporation causes the entire sales tax to be due and payable. (3) Whether the Sales Tax Act authorized the Director to compel a retailer to remit sales tax on credit sales on the accrual basis. (4) Whether the Department's deficiency assessment can be upheld for more than the correct amount of sales tax due.

## I.

### The Administrative Procedure Act

The district court found that the Director's revocation of Wards' permission to remit sales tax on a cash basis was accomplished summarily without a hearing, but concluded that the State Administrative Procedure Act, article 4, title 24, C.R.S.1973, did not apply to the revocation.

Wards asserts that the 1964 letter from the Department permitting Wards to make returns on the cash basis was a "license" as defined in section 24–4–102(7), C.R.S.1973 (1979 Supp.):

"(7) 'License' includes the whole or any part of any agency permit, certificate, registration, charter, membership, or statutory exemption."

Wards then claims that the Director's letter revoking permission to remit sales tax on the cash basis amounted to a revocation of a "license" and that the Director could not effect a revocation without complying with the notice and hearing requirements of sections 24–4–104 and 24–4–105, C.R.S.1973.

The Department takes the position that the Director followed the procedure required by the Sales Tax Act for the assessment, protest, hearing, and appeal of tax matters, and that the State Administrative Procedure Act is not applicable. Specifically, section 39–26–111, C.R.S.1973, makes the withdrawal of the authorization to make returns on the cash basis discretionary with the Director. The provisions of section 39–26–111, C.R.S.1973, according to the Department, provide for summary action by the Director, and control over the general provisions of the State Administrative Procedure Act. *See* section 24–4–107, C.R.S. 1973, *infra.*

It is a general rule of statutory construction that a specific statute prevails over a general one. *Shoenberg Farms v. People ex rel. Swisher*, 166 Colo. 199, 444 P.2d 277 (1968). *See also*, section 2–4–205, C.R.S. 1973. Section 24–4–107, C.R.S.1973, embodies this general rule of statutory construction and states:

"[B]ut, where there is a conflict between this article and a specific statutory provision relating to a specific agency, such specific statutory provision shall control as to such agency."

The issue is whether section 39–26–111, C.R.S.1973, which grants the Director discretion to withdraw authorization to make returns on a cash basis, takes precedence over sections 24–4–104 and 24–4–105, C.R.S. 1973, which provide for notice and an opportunity to be heard prior to revocation of a "license" by an agency.

■■■ Section 39–26–111, C.R.S.1973, specifically provides that the authorization to make returns and pay taxes on the cash basis is effective *"until further order of the executive director."* (Emphasis added.) Sections 24–4–104 and 24–4–105, C.R.S. 1973, set forth the notice and hearing requirements generally applicable to revocation of a "license" by an agency. Because section 39–26–111, C.R.S.1973, specifically makes the Director's authority to withdraw permission to make returns and pay taxes on the cash basis discretionary, that specific provision controls over the general provisions of sections 24–4–104 and 24–4–105, C.R.S.1973. *See* section 24–4–107, C.R.S.

1973, *supra. See also, Shoenberg Farms v. People ex rel., supra; People ex rel. State Board v. McFarland*, 37 Colo.App. 93, 543 P.2d 112 (1975); *Hentges v. Bartsch*, 35 Colo.App. 384, 533 P.2d 66 (1975). *Cf. Department of Revenue v. District Court*, 193 Colo. 553, 568 P.2d 1157 (1977). (The Court will not find a conflict between two statutes where none plainly appears.)[3]

The district court conclusion that the State Administrative Procedure Act did not apply to the Director's revocation was correct.

## II.

### *Sale of Accounts Receivable*

Wards also contends that Regulation 138–5–11, C.C.R., is void because the Director does not have the authority to enact regulations which conflict with the Sales Tax Act. If Regulation 138–5–11, C.C.R., is valid, Wards asserts that it cannot be the basis of the deficiency assessment because Wards and Credit Corporation are a single "person" as defined by statute, and thus the sale of the accounts receivable is irrelevant. *See* section 39–26–102(6), C.R.S.1973, *infra.*

### A.

### *Regulation 138–5–11*

Pursuant to section 39–21–112, C.R.S. 1973, the Director is empowered to adopt, amend, or rescind rules and regulations which are consistent with the provisions of article 26 of title 39, C.R.S.1973 (Sales Tax Act). Section 39–26–122, C.R.S.1973, causes the administration of the Sales Tax Act to be vested in and exercised by the Director of the Department of Revenue who has the power to prescribe forms and reasonable rules and regulations for the ascertainment and assessment of taxes.

Section 39–26–111, C.R.S.1973, provides in part:

"In case of a sale upon credit ... there shall be paid upon each *payment*, upon the account of purchase price, that portion of the total tax which the amount paid bears in the total purchase price...." (Emphasis added.)

Regulation 138–5–11, C.C.R., provides in part:

"When the retailer on a time payment plan, conditional sale, or a sales secured by a chattel mortgage, negotiates or *sells* the finance paper, he is deemed to have received the full balance of the consideration for the original sale and is liable for the remittance of the sales tax on the balance of the total sales price not previously reported, which amount shall be included in the return for the month during which the paper was assigned, negotiated or sold." (Emphasis added.)[4]

Wards claims that section 39–26–111, C.R.S.1973, declares that payment of an account constitutes the tax event which requires payment of sales tax, and that Regulation 138–5–11, C.C.R. changes the event which triggers payment of tax to the sale of the account. Wards' theory is that Regulation 138–5–11, C.C.R., is void because it is inconsistent with section 39–26–111, C.R. S.1973.

We conclude that Regulation 138–5–11, C.C.R., is not inconsistent with section

---

**3.** We do not decide whether the Department's approval of Wards' request to report sales tax on a cash basis constituted a "license" within the meaning of section 24–4–102(7), C.R.S.1973 (1979 Supp.).

**4.** Regulation 138–5–11, C.C.R. has been codified by the General Assembly in section 39–26–111(2), C.R.S.1973 (Colo.Sess.Laws 1979, ch. 373, 39–26–111 at 1447). Section 39–26–111(2), C.R.S.1973, effective December 1, 1979, provides:

"If a retailer transfers, sells, assigns, or otherwise disposes of an account receivable, he shall be deemed to have received the full balance of the consideration for the original sale and shall be liable for the remittance of the sales tax on the balance of the total sale price not previously reported; except that such transfer, sale, assignment, or other disposition of an account receivable by a retailer to a closely held subsidiary, as defined in section 39–26–102(10)(k), shall not be deemed to require the retailer to pay the sales tax on the credit sale represented by the account transferred prior to the time the customer makes payment on said account."

39–26–111, C.R.S.1973. Accordingly, the regulation is a valid exercise of the Director's authority under sections 39–21–112 and 39–26–122, C.R.S.1973. When Wards divested itself of its interest in the accounts receivable by sale to a third party, it received payment for the accounts including the tax owing on said accounts. Thus, Wards received "payment" of the purchase price for the account within the meaning of section 39–26–111, C.R.S.1973. The finality of the sale is evidenced by the fact that Wards imposed the condition that the sale was without recourse.

### B.

### *Section 39–26–102(6), C.R.S.1973*

The district court concluded as a matter of law that since Wards and Credit Corporation were separate corporations, they were not a "person" within the meaning of section 39–26–102(6), C.R.S.1973. Thus, the court concluded that Wards' sale of accounts receivable to Credit Corporation was a cash sale and that the sales tax was due:

> "If Montgomery Ward and Credit Corporation are one 'person' then, in this Court's opinion, the Deputy Director did give Montgomery Ward permission to pay sales tax on accounts sold Credit Corporation as payments were made to Montgomery Ward."

> \*　\*　\*　\*　\*　\*

> "The Court concludes as a matter of law that Montgomery Ward and Credit Corporation are not one 'person' as defined by statute, since Montgomery Ward is an Illinois corporation and Credit Corporation is a Delaware corporation which does no business in Colorado and does not pay any income tax in this state. [Citation omitted.] Since Montgomery Ward and Credit Corporation are not one 'person' it follows that the sale of accounts receivable by Montgomery Ward to Credit Corporation are cash sales and the sales tax on such sales are due on a cash basis."

Section 39–26–102(6), C.R.S.1973, provides:

> " 'Person' includes any individual, firm, partnership, joint adventure, corporation, estate, or trust, or any group or combination acting as a unit, and the plural as well as the singular number."

Wards argues that the district court erred in failing to make a factual finding as to whether Wards and Credit Corporation were acting as a "unit," and erred in its application of the appropriate law to the facts of this case. We disagree.

Although the district court did not specifically state that Wards and Credit Corporation were not "acting as a unit," the court did state in its conclusions of law that Wards and Credit Corporation were not one "person" as defined by section 39–26–102(6), C.R.S.1973. The court specifically considered the fact that Wards and Credit Corporation were separate corporations. *See White Motor Corporation v. Kosydar*, 50 Ohio St.2d 290, 364 N.E.2d 252 (1977). The record also establishes that Credit Corporation was not the exclusive purchaser of Wards' accounts receivable.

■ The court's conclusion that Wards and Credit Corporation were not a single "person" as a matter of law is supported by the record.

### III.

### *Use of the Cash Receipts Basis Under the Sales Tax Act*

In the January 28, 1977 revocation letter, the Director said:

> "Pursuant to statute, 39–26–111, C.R.S. 1973, it is my order that effective February 1, 1977, the permission to remit Colorado sales tax on the basis of cash actually received [cash basis] granted by the Department of Revenue by letter of January 31, 1964 is hereby revoked.

> "Accordingly, February sales tax that is due and payable on March 21, 1977 must be remitted on the accrual basis."

Wards contends that the Director cannot force it to remit sales tax on any basis other than the cash basis. As a retailer, Wards

claims that it is only a tax collection agent for the state, and that the revocation is void in so far as it requires Wards to pay the tax before it is collected from the purchaser. Wards also argues that that portion of section 39–26–111, C.R.S.1973, which allows the Director to authorize a retailer doing business wholly or partly on a credit basis to make returns on the basis of cash actually received, applies only to the method of reporting taxes, not the payment of taxes.[5]

The General Assembly has set forth a basis in the sales tax act for remittance of sales tax on the accrual basis. Section 39–26–105(1)(a), C.R.S.1973, makes a licensed retailer the state's agent for collection and remittance of sales tax due from the purchaser. Section 39–26–105(1)(a), C.R.S.1973, also provides that the tax is incurred upon the sales transaction and must be remitted to the state by the 20th day of the month next following the sale. Section 39–26–102(5), C.R.S.1973, defines gross taxable sales as the total amount received in money, credits, or property, with credit provided against taxable sales on returned goods or worthless accounts. Section 39–26–102(5), C.R.S.1973, also provides for remittance of sales tax to the state on the cash basis, but only on accounts whose payments are extended over a period longer than sixty days from the date of the sale.

Section 39–26–111, C.R.S.1973, provides: "Credit sales. In case of a sale upon credit, or a contract for sale wherein it is provided that the price shall be paid in installments and title does not pass until a future date, or a chattel mortgage or a conditional sale, there shall be *paid* upon each payment, upon the account of purchase price, that portion of the total tax which the amount paid bears in the total purchase price. The executive director of the department of revenue may authorize a retailer doing business, wholly or partly on a credit basis, to make *returns* on the basis of cash actually received. Thereafter the retailer shall make *return* and *pay* taxes on that basis until further order of the executive director. . . ." (Emphasis added.)[6]

▪ The first sentence of the statute mandates that a retailer pay the sales tax portion of each individual payment received on a credit sale in the same proportion that the amount paid bears to the total purchase price. The second sentence of the statute provides that the Director may authorize a retailer to make returns on the basis of cash actually received. Wards argues that there is a distinction between reporting and paying sales tax, and that because the first sentence of the statute states that sales tax shall be paid on a cash basis, the Director is limited in his authority to require payment of sales tax to the cash basis. We disagree.

▪ The third sentence of the statute specifically states that once a retailer has secured permission from the Director to report taxes on a cash basis, he shall thereafter make return and *pay* taxes on that basis until further order of the Director. (Emphasis added.) Thus, the statute provides that the Director has the authority to order

---

5. Wards asserts that the district court erred in failing to determine whether Wards' Charg-All accounts meet the definition of a sale at retail where the payment of the principal sum thereunder is extended over a period longer than sixty days. Sales tax on such sales are due and payable on a cash basis. Section 39–26–102(5), C.R.S.1973. We do not reach the merits of Wards' assertion since Wards' sale of its accounts receivables to Credit Corporation triggers the requirement to pay the entire tax due on the sale when the account is sold. See Part II of this opinion, *supra*.

6. Section 39–26–111, C.R.S.1973, has been amended effective December 1, 1979, to provide that a retailer doing business wholly or partly on a credit basis may, at his election, make a return, and remit sales tax on credit sales, on the basis of the aggregate amount of cash received during the month from taxable credit sales. The retailer may determine the tax to be remitted on the basis of his reasonable estimate of the aggregate amount of tax which he has collected from his credit customers during the month. The statute provides a method of determining the tax which shall be deemed reasonable, but in no event is the amount of taxes remitted by the retailer in any month to be less than the amount which the retailer actually estimates to have been collected in that month. Colo.Sess. Laws 1979, ch. 373, 39–26–111 at 1446.

payment of taxes on a basis other than the cash basis.

■ The record supports the district court's finding that "the method used by [Wards] in computing [its sales tax] was not authorized by statute...." Essentially, Wards computes its sales tax liability by looking to the aggregate of its receivables and their relationship to gross taxable sales. This accounting method is based on assumptions and estimates unrelated to actual payments made by a customer on a particular account. An estimate of the amount of taxes due does not satisfy the statutory requirement that a retailer keep suitable records of all sales and such other books or accounts as may be necessary to determine the amount of tax which Wards has the responsibility to collect. Section 39–26–116, C.R.S.1973. Wards' procedure also failed to meet the requirement that a retailer must make payment of sales tax within the month when the cash is actually received. Section 39–26–111, C.R.S.1973.[7] *Cf. Frontier Airlines v. Department of Revenue*, 194 Colo. 230, 571 P.2d 1088 (1977). (Excise tax on liquor was paid by an interstate airline on an estimated basis of quantity of sales occurring in Colorado and was justified because no specific means of determining actual quantity of liquor sales in Colorado existed.)

We conclude that the Director has the authority to compel Wards to remit sales tax on credit sales on the accrual basis under section 39–26–111, C.R.S.1973, and the basis for payment of sales tax set forth in the Sales Tax Act. *See generally, State Tax Commission of Arizona v. Montgomery Ward & Co., Inc.*, 113 Ariz. 18, 545 P.2d 942 (1976).

### IV.

### *Determination of the Correct Amount of Tax Due*

Wards claims that the Director's only statutory authority to make sales tax as-

sessments is found in section 39–21–103(1), C.R.S.1973, which requires the Director to examine returns, determine the correct amount of tax, and assess the difference between the correct amount and the amount paid:

"As soon as practicable after [a] ... sales ... tax return is filed, the executive Director of the department of revenue shall examine it and shall determine the correct amount of tax. If the tax found due is greater than the amount theretofore assessed, a notice of deficiency shall be mailed to the taxpayer by certified mail."

Wards asserts that the district court erred in sustaining the $2,163,541.39 assessment because the Department's assessment amounts to retroactive imposition of the accrual method which requires Wards to pay a sales tax which is not owed. Error is also claimed because the district court entered judgment for the full amount of sales tax assessment based on the transfer of accounts receivable.

■ We agree with Wards that section 39–21–103(1), C.R.S.1973, requires that the Director examine returns, determine the correct amount of tax, and assess the difference between the correct amount and the amount paid. Wards' accounting method, however, prohibited the Director from making an accurate determination of tax liability on the basis of cash actually received. Wards' accounting method is based on assumptions and estimates unrelated to actual payments made by a customer on a particular account. The Director was required to use the accrual basis to make an accurate determination of Wards' sales tax liability.[8]

Accordingly, the judgment of the district court is affirmed.

ROVIRA and LOHR, JJ., dissent.

7. Wards does not argue that the Director's order withdrawing its permission to remit sales tax on credit sales on a cash basis was arbitrary and capricious.

8. We do not view the Director's actions as a retroactive imposition of the accrual method.

**94**

ROVIRA, Justice, dissenting.

I begin my analysis with a recognition that Montgomery Ward & Co., Inc. (Wards), as a retailer, is a collection agent for the state and that the burden of paying the sales tax falls upon the purchaser. *Department of Revenue v. Modern Trailer Sales, Inc.*, 175 Colo. 296, 486 P.2d 1064 (1971).[1]

I.

The dispute between the parties centers on the language of sections 39–26–102(5) and 39–26–111, C.R.S.1973, and the applicability of these statutes to sales made on credit which are subject to the sales tax.

Section 39–26–102(5) provides in relevant part that:

"On all sales at retail, valued in money, when such sales are made under conditional sales contract, or under other forms of sale where the payment of the principal sum thereunder is extended over a period longer than sixty days from the date of sale thereof, only such portion of the sale amount thereof may be counted for the purpose of imposition of the tax imposed by this article as has actually been received in cash by the taxpayer during the period for which the tax imposed by this article is due and payable. . . ."

Section 39–26–111 provides in pertinent part:

"In case of a sale upon credit . . . there shall be paid upon each payment, upon the account of purchase price, that portion of the total tax which the amount paid bears in the total purchase price. The executive director . . . may authorize a retailer doing business, wholly or partly on a credit basis, to make returns on the basis of cash actually received. Thereafter the retailer shall make return and pay taxes on that basis until further order of the executive director. . . ."

The Department of Revenue (Department) contends that Wards does not qualify under the provisions of section 39–26–102(5), C.R.S.1973, because its credit accounts may be paid in less than sixty days. The Department admits in its brief that if Wards did qualify under this statute it would need "neither a court order nor permission from the Director to remit sales tax on the basis of cash received."

My reading of section 39–26–102(5), C.R.S.1973, satisfies me that the Department's analysis of that section is too narrow and does not comport with reality.

Wards asserts that, under its Charg-All account, the customer has the right to defer payment over a period of more than sixty days even though he has the right to prepay within the sixty days.[2] To accept the view of the Department that the right of prepayment by Wards' Charg-All customers destroys the applicability of section 39–26–102(5) would be to require Wards to prohibit prepayment within the sixty-day period if it desired to remain eligible under the terms of the statute. Such a prohibition Wards cannot impose because section 5–2–209, C.R.S.1973 (the Uniform Consumer Credit Code), mandates that the consumer buyer has the right to prepay the unpaid balance of a consumer credit sale at any time without penalty.

In my opinion, if the Wards Charg-All account extends customer credit over a period longer than sixty days, then such credit sales come within the provision of section 39–26–102(5) and Wards is entitled as a matter of law to pay the sales tax on a cash basis.

Since the trial court made no specific findings as to whether Wards' credit accounts at issue come within the provisions of section 39–26–102(5), C.R.S.1973, I would remand to the trial court for a factual determination as to whether Wards' credit

---

1. Section 39–26–108, C.R.S.1973, provides that it is unlawful for any retailer to advertise or hold out to the public that the sales tax will be assumed or absorbed by the retailer. A retailer who does so is guilty of a misdemeanor.

2. The Montgomery Ward Charg-All Credit Agreement (Exhibit I) allows the credit buyer twenty months in which to pay an account balance of $160; for an account balance of over $504, twenty-eight months is permitted.

accounts are a form of sale "where the payment of the principal sum thereunder is extended over a period longer than sixty days from the date of sale thereof."

Since it is my view that Wards would come within the purview of section 39–26–102(5), C.R.S.1973, if its charge accounts extend credit for more than sixty days from the date of sale, I do not think it necessary to decide whether section 39–26–111, C.R.S. 1973, authorizes the Department of Revenue to require payment of sales taxes on the accrual basis.

## II.

The majority opinion adopts the trial court's rationale that the sale of the accounts receivable (finance paper) by Wards to its wholly owned subsidiary, Montgomery Ward Credit Corporation (Credit Corporation), was a payment of the credit sales and therefore the sales tax was due.

In support of its position, the majority adopts the view that since Wards and Credit Corporation were separate corporations, one organized in Illinois and the other in Delaware, they could not be a "person" as defined in section 39–26–102(6), C.R.S.1973.

The majority also concludes that Regulation 138–5–11, C.C.R., is not inconsistent with section 39–26–111, C.R.S.1973, because, when Wards sold the accounts receivable to Credit Corporation, it received payment for the accounts including the tax owing on the accounts.

However, it is clear that Regulation 138–5–11 contemplates that the sales tax is not due on credit sales until the retailer re-ceives payment from the purchaser. Such a conclusion is inescapable; otherwise, there would be no need for a regulation relating to the sale of finance paper (accounts receivable) if the retailer were reporting his sales on an accrual basis and paying the sales tax at the time of sale.

In my reading of part 1 of article 26 of title 39, C.R.S.1973, I find no statutory provision which supports the issuance of Regulation 138–5–11 other than section 39–26–122, C.R.S.1973, which authorizes the Director of the Department of Revenue to prescribe reasonable rules and regulations.

In short, there is no statutory authority to support a regulation which requires a retailer who "negotiates or sells" his finance paper to remit a sales tax which it has not yet collected from the purchaser.

Further analysis supports this conclusion. The regulation distinguishes "negotiates" from "sells" in referring to finance paper. A retailer negotiating his finance paper may be doing nothing more than pledging such paper at its local bank to secure advances made for working capital or other business purposes. Under such circumstances, according to the position taken by the Department of Revenue, the pledge of finance paper to secure a loan would mandate that the retailer would have to pay the sales tax on credit sales even though the purchaser would not have paid the full purchase price.

I do not agree with the majority that Regulation 138–5–11 is consistent with section 39–26–111, C.R.S.1973. In my view, the inconsistency between the statute and the regulation is easily discernable.

The statute requires that the retailer pay sales taxes on credit sales only for the same percentage of total tax due as he receives in *payment* upon the account of the purchase price.

The regulation makes the *sale or the negotiation* of the account the event which mandates the payment by the retailer of the sales tax.

According to section 39–26–111, C.R.S. 1973, a payment made by the purchaser of goods, which is a taxable transaction, is the decisive event. The regulation holds that the sale of the accounts receivable, a nontaxable transaction, is the decisive event.

I am of the view that the regulation is inconsistent with the statute and therefore void. *Frontier Airlines v. Department of Revenue*, 194 Colo. 230, 571 P.2d 1088 (1977).

I also disagree with the majority's conclusion that, as a matter of law, Wards and

Credit Corporation were not a single person. This conclusion is not supported by the record.

"Person," as defined in section 39–26–102(6), C.R.S.1973, includes "any individual, firm, partnership, joint adventure, corporation, estate or trust, or *any group or combination acting as a unit, and the plural as well as the singular number.*" (Emphasis added.) A fair reading of the plain statutory language shows that a "person" may include corporations or any group or combination acting as a unit.

The trial court made no finding that Wards and its wholly owned subsidiary were not "acting as a unit" in dealing with the accounts receivable (finance paper).

The trial court stated that:

"[I]f Montgomery Ward and Credit Corporation are one 'person' then, in this Court's opinion, the Deputy Director did give Montgomery Ward permission to pay sales tax on accounts sold Credit Corporation as payments were made to Montgomery Ward. If Montgomery Ward and Credit Corporation are not one 'person' as defined by statute, then the Deputy Director could not give permission contrary to the pertinent statute, C.R.S. '73, 39–26–102(5) and 39–26–111 and Regulation 138–5–11...."

The trial court's conclusions are expressed in the following terms:

"The court concludes as a matter of law that Montgomery Ward and Credit Corporation are not one 'person' as defined by statute, since Montgomery Ward is an Illinois corporation and Credit Corporation is a Delaware corporation which does no business in Colorado and does not pay any income tax in this state. (*White Motor Corp. v. Koysdar*, 50 Ohio [St.]2[n]d 290, 364 N.E.2d 252.) Since Montgomery Ward and Credit Corporation are not one 'person,' it follows that the sale of accounts receivable by Montgomery Ward to Credit Corporation are cash sales and the sales tax on such sales are due on a cash basis."

The trial court made no finding as to whether Wards and Credit Corporation were corporations "acting as a unit" even though there was evidence in the record that Wards maintains all the records in connection with the accounts, accepts all payments from the customers, and makes all charges and credits to the account.

The conclusion of the trial court, adopted by the majority opinion, that because two corporations are separate legal entities, they cannot come within the definition of "person" pursuant to section 39–26–102(6), C.R.S.1973, wholly fails to give recognition to the statutory language "acting as a unit."

Before a conclusion can be reached that the two corporations were not one "person," as defined by section 39–26–102(6), C.R.S. 1973, there must be a determination that the two corporations were not acting as a unit. I would remand to the trial court for a finding of fact as to this issue.

The judgment of the trial court should be reversed.

I am authorized to say that LOHR, J., joins in this dissent.