[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 220.]

LAUREL TRANSPORTATION, INC., APPELLEE, *v.* ZAINO, TAX COMMR., APPELLANT.

[Cite as *Laurel Transp., Inc. v. Zaino*, 2001-Ohio-167.]

*Taxation—Use tax applicable to airplane purchased out of state and furnished to users along with fuel and pilot for an hourly fee.*

(No. 00-1018—Submitted May 30, 2001—Decided July 5, 2001.)

APPEAL from the Board of Tax Appeals, No. 97-J-1617.

_____

*Per Curiam.*

{¶ 1} During August 1991, Laurel Transportation, Inc. ("Laurel") purchased a 1987 Cessna Citation III ("Citation III") for $5,300,000 by trading in a Beechcraft King Air and a Cessna Citation II with a combined value of $3,800,000, and by making a cash payment of $1,500,000. The Citation III was purchased out of state and brought into Ohio; however, Laurel paid no use tax, claiming in its unit certificate of exemption that it purchased the Citation III for resale.

{¶ 2} Prior to the purchase of the Citation III, Laurel had entered into agreements with Mercury Aviation Company ("Mercury") and Corporate Wings, Inc. ("Wings") to provide aircraft management services, including pilots, for the Beechcraft and Citation II, respectively. After the purchase of the Citation III, Laurel amended its existing agreement with Wings and later entered into a new agreement. All the agreements provided for Mercury or Wings to provide hangar space, to maintain and "operate and manage the Aircraft on behalf of the Owner," and to provide "crew services in connection with the Owner's use of the Aircraft." Under the agreements, the pilot had final authority over delaying and/or canceling flights for weather, aircraft, equipment, or facility conditions considered hazardous to the aircraft or its occupants. The agreements all required Laurel to carry at least

$25,000,000 of liability insurance and to name Mercury or Wings and their employees and subsidiaries as additional insureds.

**{¶ 3}** Laurel's charge for the use of the Citation III was $1,400 per flight hour for Leonard Horvitz, the president and sole shareholder of Laurel, for his family members, and for Moreland Management Company, an associated family company. Laurel charged all others $1,750 per flight hour to use the plane. Laurel's charge included fuel and a pilot; in addition, Laurel charged at cost for direct out-of-pocket expenses, *i.e.,* landing fees and other operational expenses, including crew expenses for meals, lodging, and transportation. There was no written documentation between Laurel and its customers.

**{¶ 4}** During the audit period April 1, 1991 through December 31, 1994, Laurel collected and remitted sales tax of about $64,000 for the charges it made to the seven persons and entities who used the aircraft. Laurel sold the Citation III to a New Zealand company in January 1995.

**{¶ 5}** The Tax Commissioner assessed Laurel a use tax in the amount of $483,280, exclusive of interest and penalties. The assessment was based on the purchase cost of the Citation III as well as fuel and maintenance expenses. Laurel appealed the assessment, but the commissioner denied Laurel's objection. Laurel appealed the commissioner's decision to the Board of Tax Appeals ("BTA"), which reversed the commissioner, finding that Laurel leased the Citation III and that it accordingly had transferred possession and control of the plane to the users.

**{¶ 6}** This cause is now before the court upon an appeal as of right.

**{¶ 7}** The tax at issue is the use tax; however, under R.C. 5741.02(C)(2) we apply the sales tax exceptions contained in R.C. Chapter 5739. The sole question presented in this case is whether Laurel's purchase of the Citation III and purchases of fuel and maintenance are entitled to the exception set forth in R.C. 5739.01(E)(1). This provision excepts all sales in which the purpose of the consumer is "[t]o resell the thing transferred * * * by a person engaging in business,

2

in the form in which the same is, or is to be, received by the person," the so-called "sale for resale" exception.

{¶ 8} We determine whether a transaction is a sale under R.C. 5739.01(B)(1), which provides:

"(B) 'Sale' and 'selling' include all of the following transactions for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever:

"(1) All transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted."

{¶ 9} The Tax Commissioner contends that *Fliteways v. Lindley* (1981), 65 Ohio St.2d 21, 19 O.O.3d 219, 417 N.E.2d 1371, requires us to reverse the BTA's decision on the grounds that transfer of possession of the airplane to the customer never occurred. In *Fliteways*, the taxpayer claimed that the aircraft it leased and the fuel it purchased for use in its charter service were being resold and were therefore excepted from sales taxation by R.C. 5739.01(E)(1). Fliteways operated a charter service, furnishing airplanes, fuel, and pilots to transport passengers and freight to various destinations. Fliteways charged an inclusive hourly fee for the airplane, pilot, and fuel. Fliteways did not transfer title in the transaction. The question posed in *Fliteways* was whether Fliteways transferred possession or granted a license to use the airplanes to its customers within the meaning of R.C. 5739.01(B)(1). We answered the question in the negative, concluding that Fliteways merely employed the airplanes and fuel in rendering personal services to its customers and did not resell them. Thus, for sales tax purposes, Fliteways did not "sell" the airplanes and fuel to its customers. *Id.* at 24, 19 O.O.3d at 221, 417 N.E.2d at 1373-1374.

{¶ 10} The commissioner further contends that *Stein, Inc. v. Tracy* (1999), 84 Ohio St.3d 501, 705 N.E.2d 676, supports his position. In *Stein*, we held that no

resale of equipment occurred when Stein furnished both equipment and an operator under its agreements. We found that, because the operators were Stein's employees, the equipment always remained in the actual possession and control of Stein and therefore did not qualify for the sale-for-resale exception. *Id.* at 504, 705 N.E.2d at 678.

{¶ 11} Laurel contends that its purchases should be excepted as sales for resale because it resells the aircraft, fuel, and maintenance by transferring possession to its customers. Here, Laurel's witness, Richard Horvitz, a vice-president and customer of Laurel, testified that as a user of the aircraft, he could request the services of certain of Wings's pilots to the extent feasible with scheduling; subject to the pilot's control of safety, Horvitz made the decisions on where to go and when to leave. Horvitz further stated that the user could use his or her own pilot if the pilot was certified for the Citation III, had adequate experience, and was deemed worthy of Laurel's trust. However, no customer requested use of his or her own pilot, and using such a pilot would not have reduced the hourly fee.

{¶ 12} We find essentially no difference between this case and *Fliteways*. Here, and in *Fliteways*, the owners furnished an aircraft, fuel, and pilot to users for an hourly fee, albeit through contractual agreements with others. Laurel distinguishes *Fliteways* from this case because Laurel contracted with Wings to maintain the aircraft and to furnish fuel and pilots. We do not agree that this is a defining difference. Laurel chose the third party to furnish the pilots. While the users could determine when and where they wanted to travel, Laurel provided the transportation service that took them. Laurel controlled the aircraft by contracting with Wings to fly the aircraft.

{¶ 13} Here, as in *Stein*, Laurel owned the equipment and furnished the operator, thus remaining in possession and control of the equipment.

{¶ 14} Consequently, we disagree with the BTA's conclusion that a "sale" occurred. We hold that the BTA's decision was unreasonable and unlawful and reverse it.

*Decision reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

––––––––––––––––––

*Betty D. Montgomery,* Attorney General, *Richard C. Farrin* and *Janyce C. Katz*, Assistant Attorneys General, for appellant.

*Baker & Hostetler, Christopher J. Swift, William M. Toomajian* and *Gina A. Brickley*, for appellee.

––––––––––––––––––