{¶ 26} AM JB Coporation here appeals from a decision of the Board of Tax Appeals affirming the Tax Commissioner's determination that the corporation owed a $611,128 deficiency use-tax assessment arising from its purchase of a Gates Lear Jet 60 in December of 1993. Claiming that it acquired the aircraft with the intent to lease it to Corporate Wings, Inc., which in turn agreed to provide charter services to AM JB shareholders, related corporations, and to the public, AM JB paid no tax on its purchase of the jet. It asserts on this appeal that, in accordance with R.C. 5739.01(B), a sale has occurred because it conditionally transferred possession and granted a license to use the aircraft to Corporate Wings. I would offer that based upon the facts of this case, a purchase for resale occurred pursuant to R.C.5739.01(E)(1) and therefore, the transaction would not be subject to Ohio's use tax. Thus, I would reverse the judgment of the Board.
 {¶ 27} This record reflects that in December 1993, AM JB purchased the aircraft and entered into a Charter Lease Agreement with Corporate Wings, Inc., pursuant to which Corporate Wings agreed to pay AM JB for each hour a customer would charter the aircraft. The amount charged depended on the user: $1,016.50 for each hour chartered by an AM JB's shareholder; $1,712 for each hour charted by a member of the general public; and $1,899.28 for each hour chartered by Invacare Corporation.[1] That lease agreement also obligated AM JB to guarantee payment of $14,266.60 each month, referred to in the agreement as "monthly rental". Further, Corporate Wings assumed responsibility to maintain the aircraft, but AM JB bore the cost of maintenance. In addition, AM JB had the right to approve or disapprove of any charter of the aircraft.
 {¶ 28} Contemporaneous with the Charter Lease Agreement, AM 
JB and Corporate Wings also entered into an Aircraft Management 
Operation Agreement, which not only required Corporate Wings to supply crew members and to confer with AM JB for final approval of any such crew member, but also required Corporate Wings to assign Floyd DePhillips as the primary flight captain. It also required the aircraft to be based at the Cleveland Hopkins Airport or a similar facility in the area. Further, pursuant to this contract, AM JB agreed to pay for operational costs of the aircraft, including crew fees, management fees, hanger rental, insurance, and crew training fees, as well as variable expenses, such as fuel cost, crew lodging, and supplies. These invoices were sent to Corporate Wings for payment, and AM JB would credit Corporate Wings for these charges. Finally, AM JB authorized Corporate Wings to act as its agent for the purpose of performing the services specified in the agreement.
 {¶ 29} Four years later, on December 30, 1997, the Ohio Department of Taxation issued a Sales and Use Tax Assessment against AM JB, seeking a total of $909,224.52, which reflected $611,128.00 in use tax owed, $91,669.20 in penalties, and $206,427.32 in preassessment interest, for the period from July 1, 1993 through June 30, 1996, in connection with AM JB's purchase of the aircraft.
 {¶ 30} On January 21, 1998, AM JB filed a Petition for Reassessment with the Ohio Department of Taxation contesting the tax assessment, asserting that it purchased the aircraft and leased it to Corporate Wings, and thus, claiming exemption from use tax under the "sale-for-resale" exception provided for in R.C. 5739.01(E)(1). On July 29, 1999, the Tax Commissioner of Ohio issued a Final Determination, conditionally reducing the penalties[2] but affirming the assessment in all other respects. Specifically, the Tax Commissioner determined that AM JB did not purchase the aircraft with an intent to lease it, declaring that its arrangement with Corporate Wings did not constitute a lease, but rather an arrangement in which Corporate Wings maintained, managed, and performed charter operations for AM JB. The Commissioner therefore concluded that no "sale" of the aircraft had occurred and that the contractual arrangement did not qualify for tax exemption.
 {¶ 31} On August 30, 1999, AM JB filed a notice of appeal with the Board of Tax Appeals contesting the Commissioner's determination.
 {¶ 32} AM JB and the Commissioner waived hearing before the Board of Tax Appeals. Based on the transcript they certified to the Board of Tax Appeals and the briefs, the Board upheld the Commissioner's decision.
 {¶ 33} The issue presented for consideration as I view it is whether the contractual arrangement transferred possession of or granted a license to use the aircraft, thus rendering the purchase of the aircraft exempt from sales and use tax.
 {¶ 34} Two cases are instructive in connection with the issue we face on this appeal.
 {¶ 35} In Fliteways v. Lindley (1981), 65 Ohio St.2d 21, Fliteways purchased several airplanes for its operation of a charter service. It maintained them and used them to transport passengers and freight, charging customers an hourly fee for that service. Fliteways claimed its purchase of the planes should be exempt from use tax under R.C.5739.01(E)(1), because it transferred possession or granted a license to its customers in accordance with R.C. 5739.01(B)(1). The court rejected this argument, stating that Fliteways "furnished and maintained the airplanes, employed the pilots and thus merely utilized its airplanes in transporting passengers and freight"; it held that Fliteways did not, for the purposes of sales or use tax, "sell" its planes to its charter service customers.
 {¶ 36} In Laurel Transportation, Inc. v. Zaino, 92 Ohio St.3d 220,2001-Ohio-167, the court considered Laurel's exemption claim for its purchase of an aircraft, where Laurel contracted for Corporate Wings to operate and manage the aircraft and supply hangar space and crew service, and for Laurel to carry liability insurance for the aircraft. There, Laurel charged its customers hourly rates to use the aircraft. In considering Laurel's claim of exemption from sales tax under R.C.5739.01(E), the Board of Tax Appeals found that Laurel became a lessor of the aircraft and accordingly transferred possession and control of the plane to its customers. The Ohio Supreme Court, however, reversed that determination, holding that, as in Fliteways, Laurel remained in possession and control of the aircraft and that no "sale" had occurred. It reasoned as follows:
 {¶ 37} "* * * In Fliteways, the taxpayer claimed that the aircraft it leased and the fuel it purchased for use in its charter service were being resold and were therefore excepted from sales taxation by R.C.5739.01(E)(1). Fliteways operated a charter service, furnishing airplanes, fuel, and pilots to transport passengers and freight to various destinations. Fliteways charged an inclusive hourly fee for the airplane, pilot, and fuel. Fliteways did not transfer title in the transaction. The question posed in Fliteways was whether Fliteways transferred possession or granted a license to use the airplanes to its customers within the meaning of R.C. 5739.01(B)(1). We answered the question in the negative, concluding that Fliteways merely employed the airplanes and fuel in rendering personal services to its customers and did not resell them. Thus, for sales tax purposes, Fliteways did not `sell' the airplanes and fuel to its customers. Id. at 24.
 {¶ 38} "* * *.
 {¶ 39} "We find essentially no difference between this case andFliteways. Here, and in Fliteways, the owners furnished an aircraft, fuel, and pilot to users for an hourly fee, albeit through contractual agreements with others. Laurel distinguishes Fliteways from this case because Laurel contracted with Wings to maintain the aircraft and to furnish fuel and pilots. We do not agree that this is a defining difference. Laurel chose the third party to furnish the pilots. While the users could determine when and where they wanted to travel, Laurel provided the transportation service that took them. Laurel controlled the aircraft by contracting with Wings to fly the aircraft." Id.
 {¶ 40} Distinguishing this case from those cases, AM JB argues that it provides no service involving the aircraft and that it is not in the business of transporting anyone, claiming that it transferred possession or control of the aircraft to a third party management company, i.e., Corporate Wings. This contention, I think, has merit. From my review of the facts in Fliteways and in Laurel, I recognize the added contract in Laurel for operation and management of the aircraft made no distinguishing factual difference and therefore, the court followed Fliteways in resolving Laurel.
 {¶ 41} Here, however, while a management and operation agreement exists as it did in Laurel, an actual lease agreement also exists between AM JB as lessor and Corporate Wings as lessee. This instrument provides evidence of a transfer of possession or a grant of a license to use the aircraft from AM JB to Corporate Wings, and factually distinguishes this case from both Fliteways and Laurel.
 {¶ 42} On this basis, I would conclude that the Board of Tax Appeals unreasonably and unlawfully determined that AM JB's arrangement with Corporate Wings did not constitute a "sale" within the meaning of R.C. 5739.01(E)(1) entitling it to exemption from use tax. I would reverse the decision of the Board of Tax Appeals and accordingly dissent from the majority in this instance.
[1] The record indicates that the shareholders of AM JB have an ownership interest in Invacare.
[2] The Commissioner reduced the penalties from $91,669.20 to $30,556.40 if AM JB would pay the assessment and interest within 30 days of the final decision in this matter.