IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 11, 2009  Session

## CAO HOLDINGS, INC. v. LOREN L. CHUMLEY, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

Appeal from the Chancery Court for Davidson County
No. 06-719-II     Carol L. McCoy, Chancellor

No. M2008-01679-COA-R3-CV - Filed May 27, 2009

Commissioner of Revenue assessed a tax based on the taxpayer's use of an airplane which had been purchased out of state.  Taxpayer sought review from the Department, but was denied relief following an informal hearing.  Taxpayer appealed and the Chancery Court reversed, finding that, because (1) taxpayer provided the seller with a certificate of resale, (2) taxpayer immediately leased the airplane such that it transferred possession and control of the plane to the user, and (3) taxpayer was a validly organized business which observed all corporate formalities, the sale-for-resale exemption pursuant to Tenn. Code Ann. § 67-6-102(34)(A) applied to the transaction.  Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J. joined. FRANK G. CLEMENT, JR., J. filed a dissenting opinion.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Clark B. Thornton, Assistant Attorney General, Nashville, Tennessee, for the appellant, Loren L. Chumley, Commissioner of Revenue, State of Tennessee.

G. Michael Yopp, Brett R. Carter, and Christopher A. Wilson, Nashville, for the appellee, CAO Holdings, Inc.

**OPINION**

**Background**

On December 27, 2004, CAO Holdings, Inc. ("CAO"), a Delaware Corporation, was formed for the purpose of purchasing an airplane, its sole asset.  CAM Management, Inc., ("CAM"), a Delaware Corporation, was established on the same day for the purpose of managing and leasing

CAO's airplane to third parties via time-sharing agreements.[1] This arrangement, according to CAO, had the purpose of isolating any potential tort liability to CAM while facilitating a time-sharing business which would offset the cost of the airplane. James L. Clayton is the president and sole shareholder of both CAO and CAM; the registered office of both CAO and CAM is Mr. Clayton's home, where he maintains an office for his business and philanthropic activities. The home office is staffed by several individuals who provide accounting, bookkeeping, and tax services to various of Mr. Clayton's business interests, CAO. CAM's manager and pilot, Peter Breazeale, works at the home office; Mr. Breazeale is also employed by Mr. Clayton to provide landscaping and grounds-keeping services at the Clayton home.

On February 14, 2005, CAO submitted its business tax registration to the Tennessee Department of Revenue (the "Department"); it selected as its principal business activity "retail trade, miscellaneous retail, nonstore retailers, direct selling establishments." The Department finalized CAO's registration on March 16, 2005, and issued a blanket certificate of resale with an effective date of March 1, 2005. On February 25, 2005, CAO purchased a Cessna Citation 560XL from Cessna Aircraft Company for $10,022,800.00. The plane was purchased out of state and brought to Tennessee. Upon receipt of the resale certificate, CAO provided a copy to Cessna, thereby relieving Cessna of its obligation to collect sales or use tax related to CAO's purchase of the aircraft.

On the same day it purchased the airplane, CAO signed a "Non-Exclusive Aircraft Lease Agreement" to lease the airplane to CAM. Mr. Clayton signed the agreement on behalf of both CAO and CAM in his capacity as president of each. The lease agreement required CAM to pay a "dry lease"[2] rate of $550 per flight hour of use with an initial deposit of $5,000 due on March 31, 2005. The lease also provided that rent was determined and payable annually each October 31, and CAO undertook responsibility for collecting and remitting sales tax for all rental revenue generated under the lease. The lease was non-exclusive such that CAO was free to lease the aircraft to other entities and the lease provided that CAM's possession of the aircraft was subject to "use by Owner, and may also be subject to non-exclusive lease to others during the Term." In accordance with this non-exclusive arrangement, CAO retained the right to "approve or deny any flight scheduling request in Owner's sole discretion," and superior rights to use of the aircraft. The lease provided, in this regard, "[n]otwithstanding anything in this Agreement to the contrary, any rights Lessee may have in or to the Aircraft by virtue of this Agreement, including Lessee's rights to possession and use of the Aircraft, are in all respects subordinate, junior, and subject to Owner's rights and interests." While the aircraft was in CAM's possession, though, CAM was to "maintain operational control of the aircraft," and the lease gave CAM "exclusive authority over initiating, conducting, or terminating any flight conducted pursuant to this Agreement, and the Flight Crew shall be under the exclusive command and control of Lessee in all phases of such flights." Under the lease, CAO was to obtain

---

[1] CAM is not a party to this litigation.

[2] "Dry lease" in the aviation industry means that CAO, as the owner, provided the airplane to CAM without any crew to operate it and CAM was responsible for retaining, at its expense, a qualified flight crew, maintaining the aircraft, and paying the operating costs associated with its use.

liability insurance naming both CAO and CAM as Named Insureds, but CAM was required to pay the insurance premiums.

Following the signing of the lease, CAM entered into eight time-share agreements,[3] and arranged for the time-share users to use the airplane. Those that used the airplane pursuant to the time-share agreements were sent invoices by CAM and paid CAM for the time they used the plane. CAM in turn paid CAO for all flight hours it used as required by the lease. On September 6, 2005, CAO sold the plane because it was not profitable. On October 7, 2005, CAO filed a sales and use tax return reporting all rental income received from CAM flights of the aircraft originating in Tennessee up to the time of the sale of the aircraft and remitting $1,694 in sales tax.[4]

On June 8, 2005, the Department sent a letter to CAO asking it to provide the Department with copies of the bill of sale from its purchase of the airplane and proof of any tax paid. On August 5, 2005, the Department assessed CAO $703,232.00 in use tax and accrued interest because no sales tax had been paid on the aircraft.[5] CAO challenged this assessment claiming that it had purchased the plane for the purpose of leasing it to CAM and that the lease qualified as a resale under the sale-for-resale exemption to the sales and use tax. Following an informal hearing, the Department denied CAO's request for relief and CAO filed suit in the Davidson County Chancery Court seeking a declaration that it did not owe the tax. CAO later paid the assessment and accrued interest and sought reimbursement as relief in the suit.

On February 19, 2008, the parties filed cross-motions for summary judgment; they stipulated that there were no material facts in dispute. On June 27, 2008, the court entered its Memorandum and Final Order, granting summary judgment to CAO based on the findings that CAO "met the regulatory requirements for the sale-for-resale exemption" and there was "no compelling reason to disregard the corporate existences of either CAO Holdings or CAM Management." The court explained that "both entities were formed for a valid business reason and, therefore, must be

---

[3] Of the eight time-share agreements CAM sold, two were sold to Mr. Clayton and/or entities under his control – one was sold to James L. Clayton, individually and another to Clayton Bancorp, Inc., of which Mr. Clayton is the director and principal shareholder, although, Carl Koella, Clayton Bancorp Vice President, signed the agreement with CAM on behalf of Clayton Bancorp. The six other agreements were purchased by the following entities: Clayton Homes, Inc., signed by Kevin T. Clayton, President; Clayton Motors, Inc., signed by B. Joe Clayton, President; Clayton Used Cars, Inc., signed by B. Joe Clayton, President; Clayton Volvo, signed by B. Joe Clayton, President; American City Bank, signed by Troy Martin, President; and 21st Mortgage Company, signed by Tim Williams, President.

[4] CAO filed the following Sales and Use Tax Returns with the Department during the period it owned the plane: June 1 reporting no sales for the periods 3/1/05 - 3/31/05, 4/1/05 - 4/30/05 and 5/1/05 - 5/31/05; July 1 reporting no sales for the period 6/1/05 - 6/30/05; an amended return July 29 reporting sales of $5,000 for the period 6/1/05 - 6/30/05 and remitting $430 in sales and use tax; August 8 reporting no sales for the period 7/1/05 - 7/31/05; September 1 reporting no sales for the period 8/1/05 - 8/31/05; October 7 reporting sales of $23,050 for the period 9/1/05 - 9/30/05 and remitting $1,694; November 7 reporting no sales for the period 10/1/05 - 10/31/05; December 5 reporting no sales for the period 11/1/05 - 11/30/05; and January 6 reporting no sales for the period 12/1/05 - 12/31/05.

[5] The Department later amended and increased the tax assessment to $779,521.57.

respected" and found that "a valid lease existed between CAO Holdings and CAM Management." The trial court certified its judgment as final in accordance with Rule 54.02, Tenn. R. Civ. P.

The Department appeals contending that the sale-for-resale exemption does not apply to CAO because its purchase of the airplane was primarily for the use of CAO's owner and not for lease. Specifically, the Department contends that (1) the lease between CAO and CAM was not a valid lease because by its terms CAO retained the use of the airplane and (2) the record shows that CAO was the primary user of the plane. CAO contends that both CAO and CAM are validly organized corporations that observe corporate formalities; that the lease between them was valid, as it gave CAM the right to use CAO's airplane; and that the transaction met the regulatory requirements for the sale-for-resale exemption.

The sole question presented on this appeal is whether CAO's purchase and lease of the aircraft entitles it to the exemption at Tenn.Code Ann. § 67-6-102(34)(A) (2006), commonly referred to as the sale-for-resale exemption.

## Standard of Review

This appeal is from a grant of summary judgment. Summary judgment is appropriate if no genuine issues of material fact exist, and the movant proves it is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.03. The parties here filed cross-motions for summary judgment and stipulated at trial that there were no material facts in dispute. Since our review concerns questions of law, we review the record *de novo* with no presumption of correctness. *See* Tenn. R. App. P. 13(d); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

## Analysis

In an action challenging the assessment of sales and use taxes, penalties and interest, the Commissioner bears the initial burden of proving that the taxpayer is subject to the sales or use tax at issue. *Sodexho Mgmt. v. Johnson*, 174 S.W.3d 174, 177 (Tenn. Ct. App. 2004) (citing *Prodigy Services Corp. v. Johnson*, 125 S.W.3d 413, 416 (Tenn. Ct. App. 2003)). Once this is established, the taxpayer bears the burden of proving that it is exempt. *Id.* (citing *Jack Daniel Distillery, Lem Motlow, Prop. v. Johnson*, 740 S.W.2d 413, 416 (Tenn. 1987)). There is a presumption against exemptions. *Id.* (citing *Kingsport Publ'g Corp. v. Olsen*, 667 S.W.2d 745, 746 (Tenn. 1984)).

The use tax is imposed on any dealer[6] who brings tangible personal property into Tennessee for use in Tennessee. Tenn. Code Ann. § 67-6-201 (2006); Tenn. Code Ann. § 67-6-210 (2006). Upon providing proof to the Commissioner that sales tax was paid on the purchase, the taxpayer is entitled to a credit on the use tax. Tenn. Code Ann. § 67-6-507(a) - (b) (2006). One who does not

---

[6] A "dealer" is defined as "every person . . . who: (E) Leases or rents tangible personal property, as defined in this chapter, for a consideration, permitting the use or possession of the property without transferring title to such property; . . . ." Tenn. Code Ann. § 67-6-102(12). There is no dispute that CAO qualifies as a "dealer."

pay a sales tax, but who purchases tangible personal property for the purpose of reselling or leasing it is exempt from the use tax under the sale-for-resale exemption.[7]  Tenn. Code Ann. § 67-6-102(34)(A) and (36)(A) (2006).

In order for an out-of-state purchase to be treated as one for resale and, thus, not subject to the use tax, the purchaser must strictly follow statutory and regulatory requirements.  The purchaser must register with the Department as a "dealer," and when making purchases, present a valid resale certificate to the seller establishing the purchaser's right to acquire goods free of tax; the purchaser must then actually lease or resell the item; and the purchaser must not make use of the item before such "sale."  Tenn. Comp. R. & Regs. 3120-5-1-.32, -.62, -.63 and -.68.  The purchaser, or owner, is then liable for sales taxes on the lease or rental payments it receives from the lessee.  Tenn. Comp. R. & Regs. 3120-5-1-.32(1) and (5); *see also* Tenn. Ltr. Rul. 07-32; Tenn. Ltr. Rul. 96-03; Op. Tenn. Att'y. Gen. 84-213, 1984 WL 186305 (1984).

The Department contends that the "Non-Exclusive Lease Agreement" between CAO and CAM was not a valid lease or, at the least, was defective for purposes of eligibility for the sale-for-resale exemption because it did not give CAM exclusive possession or control of the aircraft.  The Department contends that *Laurel Transportation, Inc. v. Zaino, Tax Commr.*, 92 Ohio St.3d 220, 749 N.E.2d 296 (2001), is applicable to the facts here and that the result should be the same as in *Laurel*.

In *Laurel*, Laurel Transportation ("Laurel") purchased an aircraft out of state and brought it into Ohio; it paid no use tax, claiming that it purchased the aircraft for resale.  749 N.E.2d at 296.  Laurel entered into agreements with Mercury Aviation Company and Corporate Wings, Inc., to provide hangar space, to maintain and "operate and manage the Aircraft *on behalf of the Owner*," and to provide "crew services *in connection with the Owner's use* of the Aircraft."  749 N.E.2d at 297 (emphasis added).  The agreements also required Laurel to carry liability insurance and name Mercury and Wings as additional insureds.  *Id.*  Laurel charged certain individuals, such as its president and his family members as well as companies affiliated with Laurel $1,400 per flight hour to use the plane while charging all others a slightly higher rate.  *Id.*  Laurel collected and remitted sales tax of about $64,000 for the charges it made to the seven persons and entities who used the aircraft.  *Id.*

The Ohio Tax Commissioner assessed Laurel a use tax based on the purchase cost as well as fuel and maintenance expenses, which assessment was upheld by the Supreme Court of Ohio.  *Id.* at 298.  The court held that "[w]hile users could determine when and where they wanted to travel, Laurel provided the transportation service that took them.  Laurel controlled the aircraft by contracting with Wings to fly the aircraft."  *Id.* at 298.  The court further explained, "Laurel owned the equipment and furnished the operator, thus remaining in possession and control of the equipment."  *Id.*

---

[7]  The definition of "sale" includes leasing or renting. Tenn. Code Ann. § 67-6-102(36)(A) (2006).

-5-

We do not agree that the holding or rationale of *Laurel* is dispositive of this case. In *Laurel* the owner of the airplane never leased its plane to any other entity. In contrast to the present case, the agreements in *Laurel* stated that Mercury and Wings would operate and manage the aircraft "on behalf of the Owner" and provide crew services "in connection with the Owner's use." By its terms, such agreements indicated that Laurel's purpose in owning the aircraft was to use it in the course of its business.

By contrast, CAO's purpose in owning the aircraft was to lease it to another company, CAM, which would then sell time-share agreements to other companies who would use the plane. The lease at issue gives CAM the non-exclusive right to possess and use the aircraft. Under the terms of the lease, CAM was solely responsible for the maintenance and operation of the plane and provided the plane, along with operating services, to the companies or individuals who purchased time-shares from CAM.

The Department emphasizes the non-exclusive nature of the lease between CAO and CAM as the justification for denying the applicability of the sale-for-resale exemption. We do not find a statutory requirement of exclusive possession. Tenn. Code Ann. § 67-6-102(25) (2006) defines a lease as "the leasing or renting of tangible personal property and the possession *or use thereof by the lessee* or renter *for a consideration*, without transfer of the title of such property...." (emphasis added). There is nothing in the statutory definition of a lease that indicates a legislative intent to require a lease to give exclusive possession or use in order to fall within the sale-for-resale exemption. The fact that entities other than CAM might be able to lease the plane does not detract from the finding that CAO's purpose in owning the aircraft was to lease it, which CAO did.

This determination, however, does not settle the issue. The regulations also require that, where leasing the item serves as the applicable "resale," leasing must be the primary purpose for which the property is held; otherwise, the taxpayer will be subject to use tax on the item. *See* Tenn. Comp. R. & Regs. 1320-5-1-.32(3); Tenn. Ltr. Rul. 07-32; Op. Tenn. Att'y. Gen. No. 84-213, 1984 WL 186305, at *2 (1984). The doctrine of primary use is well known in tax law and provides that the primary use of the item will control for taxability purposes. Op. Tenn. Att'y. Gen. No. 84-213, 1984 WL 186305, at *2 (1984); *Fliteways, Inc. v. Lindley*, 65 Ohio St.2d 21, 417 N.E.2d 1371 (1981) (relied upon the purchaser's primary use of the property as indicative of its purpose in determining whether the puchaser incurred sales tax on its acquisition of an aircraft).

The Department points to the airplane's flight log as evidence that CAO was the primary user of the plane and not CAM and, consequently, that the sale-for-resale exemption does not apply. The flight log, which is a standard form provided by Cessna, has a space at the top of the form to identify the "operator of aircraft." The flight log then has several blank rows in which to fill in the details of each flight. The flight log identifies the date and destination of each flight, but does not indicate who was using or riding in the plane as passengers. For the period CAO owned the plane, the flight

log lists CAO as the plane's "operator" and records 67 landings of the plane representing 24 trips.[8] CAM's pilot, Peter Breazeale, was the pilot on the majority of the trips with Mr. Clayton often serving as co-pilot.

The Department places a great deal of emphasis on the fact that the log identifies CAO as the operator and lists Mr. Clayton as either the pilot or co-pilot on a majority of the flights, contending that this demonstrates that CAO, as opposed to CAM, was the user of the plane for those particular flights. We do not agree that the information contained on the log supports the conclusion that CAO was the primary user, particularly when considered in light of other evidence in the record.

Mr. Clayton was the president of CAM and testified that he often flew as Mr. Breazeale's co-pilot because CAM "hadn't certified other pilots at that time" and "[e]ven though the other users of the airplane were using it, I still welcomed the opportunity to go along and fly the airplane with Peter." There were only six trips listed in the flight log where Mr. Breazeale was not the pilot or co-pilot and those were piloted by Mr. Clayton. CAM was party to eight time-share agreements with other entities; these included Mr. Clayton in his individual capacity as well Clayton Bancorp, one of as his business interests. Mr. Clayton had access to two other aircraft that he could use for personal trips.[9] Most importantly, CAM paid CAO for all flight hours used and CAO paid appropriate sales taxes on the receipts. Consequently, we find that CAM was the primary user, not CAO.

Finally, the Department contends that the CAO - CAM transactions were a sham by which Mr. Clayton was able to use the plane without paying the use tax on its acquisition. The Department asserts that "there was no personal distance between Clayton and the use of the airplane" and that the transactions between CAO and CAM were a sham for the purpose of tax avoidance.

Generally, the separate legal status of a corporation will be respected and the form of a transaction will govern for sales and use tax purposes. *Standard Advertising Agency, Inc. v. Jackson*, 735 S.W.2d 441, 443 (Tenn. 1987)(upheld tax liability of advertising subsidiary which was created as a separate and distinct corporation even though subsidiary had no employees or location separate from that of its parent); *Cont'l Bankers Life Ins. Co. v. Bank of Alamo*, 578 S.W.2d 625, 631 (Tenn. 1979). Form and structure are given deference for tax purposes because "frequently the form or structure used has controlling significance for taxes and other purposes" and taxpayers must be able to structure their transactions with assurance as to the tax consequences that will result. *Id.* "While corporate entities may be disregarded where they are made the implement for avoiding a clear

---

[8] The number of landings of the aircraft is greater than the number of trips because some flights involved one or more stops or landings of the aircraft. The 24 trips for which the plane was used during CAO's ownership do not include the two flights around Wichita, Kansas on the day CAO purchased the plane, which were presumably test flights, and the delivery flight from Wichita, Kansas to Knoxville, Tennessee.

[9] At the time CAO purchased the airplane at issue, Mr. Clayton had access to a Bell helicopter, which he owned in his individual capacity, and a Cessna Five Ultra Business Jet, which was owned by Clay Air, an entity controlled by Mr. Clayton.

legislative purpose, they will not be disregarded where those in control have deliberately adopted the corporate form in order to secure its advantages and where no violence to the legislative purpose is done by treating the corporate entity as a separate legal person." *Schenley Distillers Corporation v. United States*, 326 U.S. 432, 437, 66 S.Ct. 247, 249, 90 L.Ed. 181, 184 (1946); *see Standard Advertising Agency,* 735 S.W.2d at 443; *Widdicombe v. McGuire*, 429 S.W.2d 815, 817-818 (Tenn. 1968).

The corporate entities of CAO and CAM were properly formed and observed all corporate formalities including issuing shares, adopting By Laws, holding board meetings and taking minutes. CAO and CAM observed common business practices such as signing written contracts, allocating risk, providing invoices for services and paying for services as provided for in the lease. There is no evidence from which to conclude that CAO and CAM and the transactions between them were mere shells or shams such that the corporate entities should be disregarded.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded to the Chancery Court for Davidson County for further proceedings consistent with this opinion.

Costs are taxed to Loren L. Chumley, Commissioner of Revenue, State of Tennessee, for which execution may issue if necessary.

_____
RICHARD H. DINKINS, JUDGE